THE CITY OF CHICAGO v. JOE OPENHEIM,
and
SAME v. JULIUS SIEGEL, and SAME v. NICK MILLER.

*Opinion filed October 23, 1907.*

1. APPEALS AND ERRORS—*Supreme Court has jurisdiction if constitutionality of ordinance is involved.* Whether a city has·power, under a statute, to pass an ordinance, or whether the ordinance is an unreasonable exercise of such power, are not questions which authorize the Supreme Court to take jurisdiction of a direct appeal or writ of error, but if the ordinance is claimed to interfere with constitutional rights the Supreme Court has such jurisdiction.

2. CONSTITUTIONAL LAW—*ordinance prohibiting sale or gift of street car transfer is not unconstitutional.* An ordinance prohibiting, under a penalty, the selling or giving away of any street car transfer issued to a passenger to enable him to make a continuous trip over connecting lines of the street railway company is not unconstitutional, as being a deprivation of property without due process of law.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding.

EDWIN H. CASSELS, and SYMMES & KIRKLAND, (ED-
WARD J. BRUNDAGE, Corporation Counsel, and JOHN A.
ROSE, of counsel,) for plaintiff in error.

JOSEPH EPSTEIN, and WHARTON PLUMMER, for defend-
ants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Defendants in error, Joe Openheim, Julius Siegel and
Nick Miller, were arrested and brought before the munici-
pal court of the city of Chicago charged with violating sec-
tion 1500A of the revised municipal code of said city. Said
section of the municipal code prohibits any person from
selling a street railway transfer ticket issued by a street rail-
way company within the city, given to the passenger for the
purpose of authorizing him to transfer from one car or line
to another without the payment of additional fare. It also
prohibits any person from giving away such transfer ticket
for the purpose of enabling the person to whom given to
use or offer it for passage upon any street railway car or
cars. It further prohibits any person from receiving any
transfer ticket in the manner prohibited by the ordinance,
and from using, attempting to use or offering the same for
passage upon any street railway car or cars. Penalties are
provided for the violation of the provisions of the ordi-
nance, and it was to enforce the penalty that these suits
were instituted.

The facts are not disputed. Defendant in error Open-
heim was, and had been for some time prior to his arrest,
engaged in selling newspapers at the corner of Twelfth and
Halsted streets. On the day of his arrest he was seen by a
police officer to take one from a number of transfer tickets
he held in his hands and give it to defendant in error Siegel,
who handed Openheim five cents. Openheim gave three
cents back to Siegel. Siegel boarded a car, and while in the
act of offering the transfer to the conductor for his fare was

arrested.    Defendant in error Miller was seen by a police officer to buy from the wife of defendant in error Openheim a transfer ticket and pay her two cents therefor, whereupon he was immediately arrested.    Defendant in error Openheim was charged with selling a transfer ticket in violation of the ordinance.    Defendant in error Siegel was charged with purchasing a transfer ticket and attempting to use the same for passage upon a street railway car.    Defendant in error Miller was charged with purchasing a transfer ticket for the purpose of using or attempting to use it for passage upon a street railway car.    Upon a hearing in the municipal court without a jury all of the parties were discharged, and the city of Chicago has brought the cases here for review by writs of error sued out of this court.

As there is no controversy about the facts, and the questions of law being the same in all three of the cases, by agreement of the parties the cases were consolidated in this court, and the briefs and abstracts filed in one case are considered as the briefs and abstracts in all three of them.

As there were no written pleadings in the cases except the complaint, we can only know from the statements of counsel in their briefs what defenses were made by defendants in error in the trial court.    Counsel for plaintiff in error say it was contended for defendants in error: "First, that the city of Chicago had no power to pass section 1500A of the revised municipal code of the city of Chicago; second, that if the city did have the power to pass said ordinance, the ordinance in question (section 1500A) is unreasonable in its terms, and that it is unconstitutional because it operates to take property without due process of law."    It is further said in the brief of counsel that the trial court held the city had power to pass and enforce an ordinance governing the use of street car transfers, but that the court held the ordinance in question could not be sustained as a proper exercise of such power "because it was unreasonable, oppressive and in violation of the constitution."    It is said the

trial court held a transfer ticket in the hands of the passenger to whom it was issued is property, and to deprive him of the right to sell it amounts to taking his property without due process of law.

If the controversy related only to the power of the city, under the statute, to pass the ordinance, or to the question whether the ordinance is invalid as being an unreasonable and oppressive exercise of that power, this court would have no jurisdiction to entertain these writs of error. Where, however, an ordinance attempts to interfere with a constitutional right and that is the question determined by the trial court, an appeal direct to or a writ of error from this court will lie for the purpose of reviewing said judgment. (*Wood* v. *City of Chicago,* 205 Ill. 70.) The question then presented for our consideration by this record is, whether the ordinance is in conflict with the constitutional provision that no person shall be deprived of property without due process of law.

This court held in *Chicago Union Traction Co.* v. *City of Chicago,* 199 Ill. 484, that the city had the power to fix, by ordinance, the maximum rate of fare at five cents and to provide for the issue of transfer tickets. It was contended in that case by the Chicago Union Traction Company that the charters of its constituent companies constituted contracts as to the rate of fare it might charge, and the ordinance fixing the maximum fare at five cents and requiring the issue of transfer tickets impaired these contracts and was therefore in violation of the constitution of the United States and the constitution of the State of Illinois, but the court held to the contrary.

In 1875 the legislature of this State passed an act making it unlawful for any one not authorized by the owner or owners of any railroad or railroads or steamboat to sell or transfer, for a consideration, the whole or any part of a ticket for transportation over any railroad or steamboat. The act provided that the railroad or steamboat company should

redeem tickets from purchasers who for any reason did not desire to use them, but a sale of the ticket by the purchaser to any other person than the company issuing it, by presenting it for redemption, was made punishable by a fine and imprisonment. The constitutionality of this statute was passed upon in *Burdick* v. *People,* 149 Ill. 600. One of the grounds upon which the legality of the act was challenged was that a railroad or steamboat ticket was property in the hands of the purchaser, and that the effect of the statute was to deprive him of his property without due process of law, in violation of section 2 of article 2 of the constitution of the State of Illinois. The court said (p. 606) : "The law-making power may provide means for remedying such evils as, in its opinion, may exist in the management of these public agencies of transportation, and in doing so it may sometimes impose restrictions, which are deemed to be necessary, upon the use and enjoyment of property. A man is not deprived of his property unless it is taken away from him, so that he is divested of his title and possession. To limit the use and enjoyment of property by legislative action is not to take it away from the owner, when the property, whose use and enjoyment are so limited, is invested in a business affected with a public use or is used as an accessory in carrying on such business." Similar statutes upon the same subject have been enacted by many other States and have been sustained by their courts of last resort as a proper exercise of the power of the State. We quote from the opinion of the Supreme Court of Minnesota in *State* v. *Corbett,* 59 N. W. Rep. 477, the following language, which is substantially similar to the reasoning adopted by other courts in passing upon the same question: "The fact that the purchaser of a ticket is prohibited from selling it to whom he pleases does not deprive him of his property without due process of law. The disposition of property may always be limited or regulated where public interests so require. The ticket is not destroyed or taken from the holder,

nor is his right to ride on it at all limited. The only limitation is upon his right to transfer it. If he wishes to ride on it, which is the purpose for which a ticket is presumably bought, he can do so; but if he does not use it, his only course is to require the carrier who issued it to redeem it. As already suggested, a man has no constitutional right to insist that these contracts for transportation shall be transferable, and if the legislature had seen fit to declare that they should not be, and that they could only be used by the party to whom they were originally issued, they might have done so, even without making any provision at all for their redemption by the carrier if not used." Our attention is called to but one State where such an enactment has not been sustained. In *People ex rel.* v. *Warden of City Prison,* 157 N. Y. 116, by a divided court of four to three, the New York court of appeals held a statute upon this subject invalid.

It is true, the above were acts of the legislature and not city ordinances; but if they did not amount to taking property without due process of law we are unable to see how the ordinance in question, adopted by a city council having the power to require the issue of transfers and to regulate their use, can be held to be a violation of the constitution. Section 1974 of the municipal code of the city of Chicago requires street railway companies to issue transfer tickets without further charge to persons who have paid their fare. Such transfer ticket entitles the passenger to be carried "on any other line adjoining, connecting, crossing and intersecting, as aforesaid, and owned, leased or operated by such person or corporation, for a continuous trip of any distance within the city if used within one hour after the same is issued, at the point or place for which such transfer ticket was issued." This ordinance was enacted for the benefit of passengers wishing to make a trip which necessitated the use of more than one line of the street railway company. It was not within the contemplation of the city council, in

adopting the ordinance, that a person wishing to make a trip to a point reached by the initial line of passage should have the right to demand a transfer ticket for the purpose of selling it to someone else, to be used in making a trip over a connecting line of the street railway company. When a passenger pays his fare on the street railway he is entitled to a transfer ticket if in making his trip he desires to transfer from one line to another upon which transfers are issued, and such transfer is good upon the line over which. it is issued if used at the place and within the time required. Limiting it to the use of the person to whom issued, as was said in *Burdick* v. *People, supra,* is not taking it away from him so that he is divested of his title and possession and does not therefore deprive him of his property.

*Ex parte Lorenzen,* 128 Cal. 431, (79 Am. St. Rep. 47,) is a case much in point. There the petitioner, Lorenzen, was convicted of having given away and disposed of a street railway transfer ticket in violation of section 3 of an ordinance of the city of San Francisco. Said section 3 is as follows: "No person, except a duly authorized conductor or agent of a person, firm or corporation operating a line of street railroad within the city and county of San Francisco, shall, within said city and county, issue, deliver, give or sell, or offer to issue, deliver, give or sell, to any other person whatsoever, any transfer, transfer check or ticket issued or purporting to be issued by such person, firm or corporation so operating such line of street railroad, for passage on any street railroad car or line." Lorenzen sued out a writ of *habeas corpus* from the Supreme Court of California, alleging in his petition that the ordinance under which he was convicted was void. The case is directly in point, and as we agree with the reasoning and conclusion of the court, we take the liberty of quoting extensively from the opinion. One of the grounds urged against the validity of the ordinance was, that it was an unconstitutional interference with the right of private property. The city council

of the city of San Francisco had by an ordinance required street railway companies to issue to passengers who had paid their full fare, transfer tickets, to be used by the persons to whom issued, within the time limited, upon connecting lines of such street railway company, without the further payment of fare. The court held that it was a part of the passenger's contract with the street railway company that he might transfer to and ride upon the connecting road without the payment of further fare, and that it was also a part of the contract that the passenger should use the transfer ticket, if used at all, upon the line and within the time specified and that he would not transfer or assign it to any one else. In the opinion of the court it is said: "Street car companies are public utilities, which are almost necessities to our present mode of life. While in one aspect their ownership is private and they are operated for private gain, in another they are servants of the people, and the law-making powers reserve and freely exercise the right to regulate and control them in their operations. It is upon the theory, and only upon the theory, that they may be operated for the public good that a franchise permitting their existence may be given; and the power to pass reasonable regulations for their operation and management is expressly granted by section 503 of our civil code. It is strictly within the power of the municipal authorities of the city, and properly within the exercise of their duties, to pass any reasonable regulations affecting street car lines, to remedy a threatened or actual interference with the comfort, convenience and general welfare of the traveling public. * * * It is here first insisted by petitioner that the transfer issued to him by the company is his property, and that an essential and inalienable right to the enjoyment of property is the right to sell, give it away or otherwise dispose of it. This, however, is but partially true. A man may not be deprived of his property or of his property rights for any private consideration whatever, nor for considerations of public

good, without compensation first made; but the legislature has the unquestioned right, and every day exercises it, of restricting the use to which private property may be put." After quoting from *Burdick* v. *People, supra,* the opinion proceeds: "But aside from this, in the case of this ordinance it cannot be perceived that its terms limit or circumscribe any of the just and legal rights which a passenger receiving a transfer theretofore enjoyed. In receiving it he took it under the conditions above set forth. It was a part of his contract that, if used, he alone would use it, and if he sold it or assigned it, or gave it to another, to the end that that other might use it, he clearly violated his contract and put a fraud upon the company. A court will not hear with much patience one insisting upon his right to violate his contract and consummate a fraud. The ordinance in question, therefore, so far as the passenger is concerned, leaves him all the rights which theretofore he enjoyed under his contract, and interferes in no way with any legal or legitimate use which at any time he could have made of the transfer. At the most, so far as he is concerned, it has but made penal what before was illegal and against good morals."

It is further insisted by defendants in error that the ordinance in question prohibits the selling or giving away of street railway transfer tickets without any limitation or restriction and without any regard to the place where issued or the time when issued, and it is said that if a person to whom a transfer had been issued should sell or give it away at any time after the right to use it had expired, or at any place, however distant, from the place where it was authorized to be used, such person would be subject to the penalties provided by the ordinance for its violation. A similar objection was urged to the ordinance in the *Lorenzen case,* and upon this point the court used the following language, which expresses our views upon this subject: "To some of the objections thus presented answer may be made that the life of the transfer ends with the passage of the time indi-

229—21

cated upon its face. It ceases then to be a transfer,—to have any value at all, other than that which may attach to it as a bit of paper. But for the more substantial objection that the ordinance, by its terms, would oppress and lead to the conviction of persons guilty of no fraudulent act, it is to be remembered that the letter of a penal statute is not of controlling force, and that the courts, in construing such statutes, from very ancient times have sought for the essence and spirit of the law and decided in accordance with them, even against express language; and in so doing they have not found it necessary to overthrow the law, but have made it applicable to the class of persons or the kind of acts clearly contemplated within its scope."

It is urged that there is another ordinance of the city of Chicago providing for the refunding of fares to passengers or issuing to them a coupon or ticket in cases of breakdown or delays, entitling such passengers to continue their trip on other cars of the street railway company, and that the ordinance in question purports to deprive the passenger to whom a ticket is given in such cases of the right to sell it or give it away, and that this is taking property without due process of law. If there is any such ordinance as that referred to it does not appear to have been offered in evidence, as we are unable to find it in either the abstract or record, and that question is not before us.

We are of opinion section 1500A of the municipal code of the city of Chicago is a valid ordinance, and that the municipal court erred in holding otherwise and discharging defendants in error.

The judgment of the municipal court in each of the cases is reversed and the causes remanded to that court for further proceedings not inconsistent with the views herein expressed.          *Reversed and remanded.*