City of Chicago, a municipal corporation, Appellant, v. National Management, Inc., Appellee.
City of Chicago, a municipal corporation, Appellant, v. Harvey Amsterdam, Appellee.

Gen. No. 47,685.

First District, First Division.
September 14, 1959.
Released for publication October 19, 1959.

446

John C. Melaniphy, Corporation Counsel of City of Chicago (Sydney R. Drebin, Assistant Corporation Counsel, and Robert J. Collins, Special Assistant Corporation Counsel of counsel) for plaintiff-appellant.

Milton H. Miller and L. Louis Karton, of Chicago, for defendants-appellees.

JUSTICE McCORMICK delivered the opinion of the court.

The City of Chicago filed separate ordinance enforcement suits against National Management, Inc. and Harvey Amsterdam as the owners of certain cubicle hotels, seeking fines for the violation of an or-

dinance requiring the installation of automatic sprinkler systems in such described hotels. By order of court the cases were consolidated and so proceeded to judgment. The case was tried without a jury. The trial court found that the ordinance was inapplicable to the defendants' hotels and discharged the defendants. From that judgment this appeal is taken.

The two buildings involved are the Legion Hotel, 18–22 South DesPlaines Street, Chicago, and the Workingman's Palace Hotel, 623 West Madison Street, Chicago. Both hotels are located in a district largely populated by transients and derelicts. The Legion Hotel is a four-story building, the upper three floors of which contain 194 sleeping cubicles on each floor—a total of about 580 cubicles. The Workingman's Palace Hotel is a six-story building, the upper five floors of which contain 104 sleeping cubicles on each floor—a total of about 530 cubicles. The buildings are constructed of poured reinforced concrete, and stairs and elevator are enclosed in fireproof enclosures with metal automatic doors on each floor. Fire exits, fire escapes, fire extinguishers, fire pails, emergency telephones and manual fire alarms are provided. The first floor consists of a lobby with wooden chairs and benches. The basement contains laundry facilities and heating plant, and clothing is scattered over a large area in the basement. In each hotel the cubicles are separated from one another by walls which are about four feet from the ceiling and about three inches from the floor. These walls provide fire resistance of not less than one hour, which is the standard fire resistance specified by the Municipal Code of Chicago. The only combustible materials in the cubicles, when unoccupied, are the mattress, bedding, pillow, door and wooden chairs. The walls are painted and the paint would not burn except at a very high temperature. When occupied, additional combustible materials con-

448

sisting of clothing, newspapers, magazines, cigar boxes and other items are brought into the cubicles and kept there by the guests. The buildings are in good condition and presently enjoy the lowest fire insurance rate for cubicle hotels in Chicago. If automatic sprinkler systems were installed in the hotels the insurance rates would decrease about one-third on the building and about one-half on the contents.

The first question to be determined is whether or not the ordinance of the City of Chicago requiring the installation of automatic sprinkler systems in cubicle hotels is applicable to the hotels maintained by the defendants, and in order to determine that question it is necessary to construe the applicable ordinances.

Section 96–1 of the Municipal Code of Chicago defines "lodging house" as "any house or building, or portion thereof, in which persons are harbored, received, or lodged for hire for a single night or for less than a week at one time, or any part of which is let for any person to sleep in for any term less than a week." Chapter 64 of the Municipal Code, entitled "Fire Extinguishing Apparatus," provides in section 64–1.2: "Automatic sprinkler systems shall be provided in the following buildings and areas: . . . (g) On or before January 1, 1956, in every existing or pre-ordinance building used in whole or in part as a hotel which does not comply with section 52–2 (a) of this code." Section 52–2 (a) provides:

"In all Multiple Dwellings every dwelling unit shall be separated from all other parts of the building by walls or partitions of non-combustible construction, or of construction consisting of wood studs with metal lath and plaster, or an equivalent non-combustible surface material, or with perforated gypsum board and plaster, or an equivalent non-combustible surface material, and shall provide fire resistance of not less than one hour."

449

Section 65–2 defines "fire resistance" as the ability to withstand fire or give protection from it for given periods under prescribed test conditions.

Chapter 78.1 of the Municipal Code of Chicago is entitled "Men's Cubicle Hotels." Section 78.1–1 defines "men's cubicle hotels" as including "all lodging houses exclusively maintained for men, containing sleeping stalls the separating partitions of which do not reach the ceiling." Section 78.1–2 provides that "every existing building, structure or part thereof and every building hereafter erected, as herein defined, shall comply with the requirements of this chapter." Section 78.1–3 provides that "all lodging houses falling within this classification shall conform with all the provisions of this code except the following: Sections . . . 52–2(a)." Section 78.1–6 provides: "All men's cubicle hotels, as herein defined, shall comply in all respects with the provisions of section 64–1.2(g)." There is a further provision in the chapter providing for penalties for violations of the provisions of the code.

The defendants' contention is that the ordinance providing for automatic sprinkler systems is only applicable to buildings used in whole or in part as a hotel which does not comply with section 52–2(a) of the Code, and that such section provides that in all multiple dwellings every dwelling unit shall be separate from all other parts of the building by walls or partitions of non-combustible construction which shall provide fire resistance of not less than one hour, and that in the cases before us the defendants had walls separating the cubicles of non-combustible construction which had a fire resistance of not less than one hour. The city urges that the walls and partitions referred to in section 52–2(a) do not "separate" the units unless the walls or partitions extend from the floor to the ceiling, and furthermore that section 52–

2(a) has no application to the case by the very terms of the ordinance.

■ It is conceded by the defendants that the city council has power to provide by ordinance for the installation of sprinkler systems except insofar as that power is limited by the constitutional requirements that the exercise thereof be in a reasonable and uniform manner and that it promote the general safety and general welfare of the public, and they urge that the only question before this court is the applicability of the ordinance under the factual situation here present.

It is apparent that the city council, in enacting chapter 78.1 of the Municipal Code of Chicago, intended to enact a comprehensive ordinance covering men's hotels in which the sleeping stalls were separated by partitions which did not reach the ceiling. The provisions dealing with fire extinguishing apparatus in section 64–1.2 were applicable to every hotel which failed to comply with section 52–2(a), which provided for the separation of each dwelling unit in multiple dwellings from all other parts of the building by walls and partitions of non-combustible construction of a designated fire resistance. In section 78.1–3 cubicle hotels are not required to conform to that section (52.2(a)) of the Code.

■ ■ Chapter 78.1 of the Municipal Code of Chicago must be interpreted to mean that all men's cubicle hotels which are lodging houses exclusively maintained for men and which contain sleeping stalls the separating partitions of which do not reach the ceiling shall in accordance with section 64.1–2 provide automatic sprinkler systems, and the exception contained in section 64–1.2(g) of those hotels which comply with section 52–2(a) providing for fireproof walls and partitions is specifically eliminated from chapter 78.1. Consequently sprinkler systems must be installed

in all cases in hotels defined as cubicle hotels in that section. The section of the ordinance requiring the installation of a sprinkler system is applicable to the hotels owned and operated by the defendants in the cases before us.

■ In a recent case dealing with the principles of statutory construction, the Supreme Court, in Scofield v. Board of Education of Community Consol. School Dist. No. 181, 411 Ill. 11, says:

"It is a generally accepted principle of statutory construction, and has been so held by this court many times, that in construing a statute or determining its constitutionality, all its sections are to be construed together in the light of the general purpose and plan, the evil intended to be remedied, and the object to be obtained, and if the language is susceptible of more than one construction, the statute should receive the construction that will effect its purpose rather than defeat it."

(See also Petterson v. City of Naperville, 9 Ill.2d 233.) In the latter case the same principle is applied to the construction of an ordinance.

■■ The defendants also argue that since the evidence in this case shows that the hotels were of fireproof construction throughout, including the walls separating the cubicles, if the ordinance were construed to require installation of automatic sprinkler devices it would be an unreasonable and oppressive exercise of the power conferred upon the city council by the statute. The Appellate Court has no jurisdiction to pass on the unconstitutionality of an ordinance. Clark Teachers' Agency v. Chicago, 220 Ill. App. 319; People ex rel. Danielson v. Rockford, 338 Ill. App. 347, and cases therein cited. In Liberty Nat. Bank of Chicago v. Metrick, 410 Ill. 429, the Supreme Court held that where the controversy relates only to the power of

the city under the statute to pass an ordinance, or as to the question as to whether the ordinance is invalid as being an unreasonable and oppressive exercise of that power, the question is one for the Appellate Court. See also Chicago v. Openheim, 229 Ill. 313.

 The defendants state in their brief that they are in complete accord with the cases which hold that the city, by a subsequently enacted ordinance, could require a pre-existing building to be altered so as to provide greater safety. In Abbate Bros., Inc. v. Chicago, 11 Ill.2d 337, the Supreme Court quotes with approval the case of City of Seattle v. Hinckley, 40 Wash. 468, 82 Pac. 747, which it refers to as a landmark case in the field, and which case held that an ordinance requiring new type fire escapes on hotels and other buildings more than three stories high was held applicable to existing structures even though some were equipped with fire escapes of a different kind. The Illinois Supreme Court says:

"After stating the public had a right to the safest method of protection that could be found and determined by the municipality, and that the latter had a duty to provide for it, the court concluded: 'It would be a sad commentary on the law, if municipalities were powerless to compel the adoption of the best methods for protecting life in such cases simply because the confessedly faulty method in use was the method provided by law at the time of its construction.' [City of Seattle v. Hinckley, 40 Wash. 468, 82 Pac. 747.] Similar sentiments were expressed by our nation's highest court in Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 90 L. ed. 1096, where a New York law requiring the installation of sprinkler systems in existing lodging houses of nonfireproof construction was held constitutional. The court said: 'Little need be said on the due process question. We are not concerned with the wisdom of this legislation or the need for it. [Citation]

Protection of the safety of persons is one of the traditional uses of the police power of the States. Experts may differ as to the most appropriate way of dealing with fire hazards in lodging houses. Appellant, indeed, says that its building, far from being a fire-trap, is largely fireproof; and to the extent that any fire hazards exist, they are adequately safeguarded by a fire alarm system, constant watchman service, and other safety arrangements. But the legislature may choose not to take the chance that human life will be lost in lodging house fires and adopt the most conservative course which science and engineering offer. It is for the legislature to decide what regulations are needed to reduce fire hazards to the minimum. . . . But in no case does the owner of property acquire immunity against exercise of the police power because he constructed it in full compliance with the existing laws.' "

That the installation of a sprinkler system might save the lives of persons lodging in the cubicles herein involved is supported by the testimony of the defendants' expert witness who testified, among other things, that if a fire in one of the cubicles had extended to clothing stored therein the life of a person not in bed at the time might be saved by a sprinkler system. The defendants in their brief say that "the cases from New York and Washington are consistent with the judicial thinking which gives the municipalities the right to require the best safety devices which scientific invention might produce."

■■ It is admitted that the city council was authorized by statute to pass the ordinance involved. We have found that the terms of the ordinance made it applicable to the premises in question, and we now hold that the ordinance, so construed, was not an unreasonable and oppressive exercise of power by the city council. The courts have no right to substitute their judgment for that of the city's legislative body

454

in determining whether or not an ordinance such as the one in issue should or should not have been enacted with the requirements therein set out.

The judgment of the Municipal Court of Chicago is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

DEMPSEY, P. J. and SCHWARTZ, J., concur.