Unique Rest Haven, Inc., Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, Defendant-Appellee.

Gen. No. 47,869.

First District, Second Division.

April 13, 1960.

John S. Charone, of Chicago, for plaintiff-appellant.

John C. Melaniphy, Corporation Counsel of City of Chicago (Sydney R. Drebin, Assistant Corporation Counsel, and Robert J. Collins, Special Assistant Corporation Counsel, of counsel) for defendant-appellee.

JUSTICE BURMAN delivered the opinion of the court.

A declaratory judgment is sought to declare certain rights in favor of plaintiff and to mandamus the defendant to approve plaintiff's application for a license to operate a rest home. The trial court found that plaintiff was in violation of certain ordinances of the City of Chicago and entered judgment for defendant. Plaintiff appeals.

Plaintiff established a rest home for the "aged and infirm" at 2341 South Calumet Avenue, Chicago, Illinois, in December, 1951. The City of Chicago issued a license for the operation of the home for the years 1951 through 1956. The property consists of a four-story building with basement. The basement is not occupied by patients but is used for a kitchen, dining room, laundry room and boiler room. The first and second floors are used for patients. The third floor is used for a staff of five people. The fourth floor is vacant.

The record shows there are thirty patients housed in the home, eight on the first floor and twenty-two on the second floor. The average patient's age is about

sixty-five years and twenty-two patients are on the public relief rolls.

Plaintiff testified that his application for a license in the years 1957, 1958, and 1959 was refused on the grounds that he was operating a rest home in a four-story building. Section 136–7 of the Municipal Code of Chicago as amended on September 22, 1954, provides in part, as follows:

"The building used as a home shall comply with the building provisions and fire regulations of this code; . . . that a home as defined herein, validly licensed by the City of Chicago . . . for which an application for such license . . . has been filed by the owner . . . may be located in an institutional building . . . not exceeding three stores and basement in height. . . ."

Section 136–7, in addition to the provision in regard to buildings in excess of three-stories, requires at least two stairways enclosed in a one hour fire-resistive wall or enclosure, with door openings protected by forty-five minute fire resistive doors, and separate door exits for each such stairway, and from the basement to the outside of the building.

There is no substantial issue of fact. The question before us is one of law: whether plaintiff was in violation of the City Code when it applied for a license.

Section 48–1 of the Municipal Code of Chicago provides for classification of buildings by "occupancy" and defines the various uses as "residential," "institutional," "business," and other categories. The Code in Section 48–12.5 provides that where a building contains "mixed occupancy":

"Each occupancy in a building of mixed occupancy shall be wholly separated horizontally and vertically from any adjoining occupancy by construction materi-

als providing fire resistance as established in Table 48–12.5."

Section 62–3.6 requires that openings in all stairway enclosures, be protected by self-closing Class B fire doors. Section 62–4.4 requires that openings in enclosures of boiler rooms be protected with self-closing Class B fire doors. Section 78–3 and Section 99–4 provides that the rear exit doors operate properly so as to afford easy ingress and egress.

■ Plaintiff's only argument is against a retroactive application of the 1954 amendment relating to the requirement of Section 136–7 that the building must not exceed three stories and it fails to discuss any of the other fire safety violations. The trial court was not limited to that section in determining whether there were violations of the Code.

■ It is within the police power of a city to regulate the construction and use of buildings for the protection of the lives and safety of persons against danger from fire. City of Chicago v. Wonder Heating & Ventilating Systems, Inc., 345 Ill. 496. The most important of the police powers of a city is that of caring for the safety and health of the community. Biffer v. City of Chicago, 278 Ill. 562. It is well established that rest homes and similar institutions must be licensed by the City and must comply with all necessary safety requirements. Father Basil's Lodge, Inc. v. City of Chicago, 393 Ill. 246; City of Chicago v. Heffron, 346 Ill. App. 248. The legislature has expressly conferred upon cities the power "to prescribe the strength and manner of constructing all buildings, structures and their accessories and of the construction of fire escapes thereon." Ill. Rev. Stat. 1953, Ch. 24, § 23–70. Cities are also empowered ". . . to cause all buildings and enclosures which are in a dangerous fire condition to be put in a safe fire condition. . . ." Ill. Rev. Stat. 1953, Ch. 24, § 23–72.

The record discloses that the building is of ordinary construction with a brick exterior and wooden joists, wood floors and open stairways in violation of Section 62–3.6. The premises are used for "mixed occupancy" and the materials between the floor and the ceilings are not fire resistant in violation of Section 48–12.5; the boiler room is not equipped with self-closing "B" doors in violation of Section 62–4.4; the rear exit doors on the second floor do not operate properly so as to afford the necessary ingress and egress in violation of Sections 78.3 and 99.4 of the Code.

It is admitted that the fire escapes in the instant case are of the ladder type. Considering the infirmities of the patients housed by plaintiff the trial court could have found that this type of fire escape would prove of no assistance to the "aged and infirm residents."

██ We are not impressed with arguments based on plaintiff's investment in the property. More important than the investment of plaintiff in the rest home is the safety of human lives that might be lost because of the non-compliance with the City ordinances designed to reduce fire hazards to the minimum.

The trial court correctly found that plaintiff was in violation of certain ordinances of the City of Chicago and entered judgment for defendant.

For that reason we cannot properly decide there was a right to mandamus.

Affirmed.

MURPHY, P. J. and KILEY, J., concur.