**City of Chicago, a Municipal Corporation, Appellee, v.
Donald Ballinger, et al., Defendants.
On Appeal of Donald Ballinger, Appellant.**

**Gen. No. 48,995.**

First District, Third Division.
January 9, 1964.

Bernard M. Kaplan, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel, of Chicago
(Sydney R. Drebin and Rita Ivy Epstein, Assistant
Corporation Counsel, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion
of the court.

This appeal is taken by Donald Ballinger, a defendant, from an order and judgment entered in the case
on July 3, 1962 in the Municipal Court of Chicago.
The defendant was found guilty. A judgment against
the defendant for $100 and costs was entered.

The statement of claim of the City of Chicago is in six counts and charges that the defendant as the instalment land contract purchaser of a three-story frame building located at 7201 South Princeton Avenue, Chicago, and one Edwin Sobol, as contract seller of said property, violated certain ordinances of the City of Chicago. Count one charges a violation of sections 78–3, 78–10.2 and 51–1.2 of the Municipal Code of Chicago, in that the defendants "failed to deconvert building from its present occupancy to its original layout and construction as a single family residence or comply with the following: (A) Discontinue the use of the attic as an apartment and remove all nonload bearing partitions to restore attic to its original use as a storage area." Counts two, three, four, five and six charge violations of sections 78–3, 78–10.2, and 52–2, in that the defendants failed to provide adequate fire resistive enclosures in various areas of the building.[1] The complaint prayed the court to enter a fine of $1,200.

[1] The pertinent provisions of the Municipal Code of Chicago are as follows:

Section 78–3 provides in part: "(a) *Maintenance required.* Every existing building shall be so kept and maintained in conformity with the applicable provisions of this code, as to eliminate conditions hazardous to the public health and safety."

Section 78–2(b) defines "Pre-Ordinance Building" as follows: "Every existing building, structure or part thereof which was completed, or for the construction of which a permit was issued prior to the effective date of this ordinance."

Section 78–10.1 provides in part: "When permitted by the Chicago Zoning Ordinance, a pre-ordinance residential unit may be converted or altered so as to increase the number of units or persons to be accommodated . . . . (a) The said pre-ordinance building shall consist of not more than four stories and a basement or not more than fifty feet in height measured from grade to underside of roof sheathing. . . ."

Section 78–10.2 deals with "conversions and enlargement of residential structures" as provided for in section 78–10.1 (viz.

The case was tried by the court without a jury. The court found both defendants guilty as charged. Defendant Sobol was fined $200 and $10 costs. Defendant Ballinger was fined $100 and $10 costs. From the judgment Ballinger takes this appeal.

"pre-ordinance residential unit") and provides that such conversions and enlargements shall be subject to the following requirements:

"(a) New or existing stairways shall be vertically separated from all other parts of the building with partitions providing fire resistance of not less than one hour.

"(b) The floor construction over the basement shall be of construction providing fire resistance of not less than one-half hour.

"(c) Furnace or other heating plants shall be separated from dwelling units by partitions providing fire resistance of not less than one-half hour.

"(d) Existing walls or partitions may be altered or replaced with material allowed in the original structure except that partitions between dwellings and those enclosing stairs and public corridors shall comply with the requirements of section 52–2.

"(e) Except where a single unit complying with all requirements of section 67–4 is permitted, each dwelling shall have access to two vertical means of exits. Existing stairs may be of wood. New stairs shall comply with the requirements of chapter 67.

"(f) Stairways shall be enclosed as required in section 62–3. Soffits of stairs shall be protected as required in section 67–10.4."

Section 51–1.2 deals with the maximum allowable height limitations on buildings "hereafter erected or altered." (This ordinance was passed December 30, 1949.) The section provides as follows:

"Except as provided in section 51–1.2, no building shall be hereafter erected or altered to exceed the maximum allowable heights established in Table 51–1.2. . . ."

Chapter 52 deals with buildings "hereafter designed, erected, altered or converted for the purposes of a Residential Unit" and Section 52–1 provides: "Every building or part of a building hereafter designed, erected, altered or converted for the purposes of a Residential Unit as defined in section 48–2 shall comply with the special provisions of this chapter . . . ."

409

An action to recover a penalty for a violation of a municipal ordinance is not a criminal action but a civil suit, and the rules of civil procedure apply. City of Chicago v. Schlensky, 339 Ill App 648, 91 NE2d 640; City of Chicago v. Knobel, 232 Ill 112, 83 NE 459. In accordance with the usual practice of cases of this type the defendant filed no formal answer. However, the uncontradicted testimony shows that the defendant, after receiving notice from the city directing that the alleged offenses in the interior use and construction of the building be corrected, obtained a contractor's estimate of $3,600 for the alterations which would be necessary in order to comply with the notice. Application was then made to the building department for a permit to undertake such alterations. The permit was denied on the ground that the third floor apartment must be "deconverted" and returned to what the city contended was its "original layout" as attic space. This narrows the issues. First it is necessary to determine whether or not under the applicable ordi-

Section 52–2 provides in part:

"(a) In all Multiple Dwellings every dwelling unit shall be separated from all other parts of the building by walls or partitions of non-combustible construction, or of construction consisting of wood studs with metal lath and plaster, or an equivalent non-combustible surface material, or with perforated gypsum board and plaster, or an equivalent non-combustible surface material, and shall provide fire resistance of not less than one hour.

"(b) In Multiple Dwellings partitions, floor construction and ceiling construction enclosing public corridors shall be of non-combustible construction, or shall be constructed of wood joists or wood studs with metal lath and plaster, or an equivalent non-combustible surface material, or perforated gypsum board and plaster, or an equivalent non-combustible surface material, and shall provide fire resistance of not less than one hour. Any openings shall be protected by doors having fire resistance of not less than a 1¾" solid flush panel door with a rebated frame of solid material 1¾" thick or metal frames of not less than #16 gauge."

nances it was necessary for the plaintiff to abandon the use of the third story of the building as a dwelling unit. If the court finds that it was not necessary, then it was the duty of the trial court to discharge the defendant under count one, and since the city had refused a permit to correct the other violations, he should also be discharged on all the other counts of the statement of claim.

The city in this court takes the view that it has power to order the deconversion of defendant's building in one of two ways: (1) by terminating use of the structure as it presently exists, cut up into separate apartment units, and reverting to the alleged original condition of the structure as a single family dwelling, or (2) by ordering that the defendant discontinue use of the third floor and restoring it to its alleged original use as attic space.

With respect to the contention of the city that it may compel the use of defendant's building as a single family residence, this court has not been referred to any zoning ordinance which prohibits multiple family dwelling units in the area of the city in which defendant's structure is located. No zoning question arises in the case.

While the trial court stated at the close of the hearing that it found the defendants guilty on all counts of the complaint, the judgment order entered in the case against defendant Ballinger stated that the court found the defendant guilty of a violation of "the ordinance described in the complaint herein," and it contained this further statement: ". . . the plaintiff have and recover of and from said defendant a fine in the sum of One Hundred Dollars ($100) in form as aforesaid assessed . . . . And it appearing to the Court that said fine accrued to the plaintiff in consequence of the violation by defendant of the ordinance of the plaintiff described in the complaint sec-

tion herein (known as 78–3) . . . ." Section 78–3 provided that all existing buildings must be kept and maintained in conformity with the applicable provisions of the code so as to eliminate conditions hazardous to the public health and safety.

In the trial of the case a building inspector for the City of Chicago testified. He stated that he had visited the premises, and he characterized the building as a two-story wooden frame building with an attic, the entire building containing six separate apartment dwelling units. He stated that he concluded from his observation that the building was about sixty years old and had been originally constructed as a single family residence. On cross-examination he stated that his testimony that the building was originally a single family dwelling was a conclusion on his part, and that he did not know of his own knowledge that the building was put to a single family dwelling use in 1890 or 1920, and that it is a fact that the zoning board map does not show the building to be a single dwelling unit in 1920. He further testified that the interior of the structure had been altered by the addition of stairwells and partitions in order to create separate apartment units. He further testified that the partitions enclosing stairwells and corridors, by which means a conversion had been effected, were of masonite and at least twenty-five years old. He stated that he "guessed" that the fire resistance quality of masonite is about ten minutes and that the current building code requirements provide that partitions of the type incorporated in the defendant's building should provide fire resistance of at least one hour.

The question of the number of stories in the defendant's building is a matter of controversy. The building inspector on cross-examination described a "third floor" and a "third floor apartment" with its own separate entrance and exit and with separate bathroom

412

facilities. Furthermore he conceded that there was an attic area above the third floor apartment. This testimony is not in accord with the city's contention that the defendant's building is only two stories in height plus an attic area. Photographs of the building appear in the record and they indicate that the building is a three-story building with an attic.

Defendant Ballinger testified that the building is a three-story structure with an attic extending above the third story to a height of twelve feet. He further stated that the third floor apartment had been rented out by him as a separate unit since he purchased the building in 1957, and that the apartment has three rooms; a front or living room, a bedroom, a kitchen, and bathroom with private bath and full plumbing facilities. He testified that except for the refusal of the city to grant a permit concerning the alleged deficiencies relating to interior partitions and stairwell enclosures and the like, he would have corrected them, and that he was now prepared to correct these alleged deficiencies.

■■ The city primarily relies on section 51–1.2 as governing the disposition of this appeal. That section states that no building shall be *hereafter erected or altered* to exceed the maximum allowable heights established in Table 51–1.2. Table 51–1.2 is a listing of maximum allowable heights in relation to certain types of buildings, and there is no question that the defendant's building falls into the classification set out in section 49–5 of the Municipal Code which describes ". . . that construction in which the structural elements, including enclosing walls, are entirely or in part of wood or other materials not more combustible than wood." According to Table 51–1.2 the maximum height for a structure of this classification is thirty feet, or alternatively, two stories plus an attic to be used for storage purposes only. The city here takes

the position that section 51–1.2 is a fire protection regulation and for this reason may be applied retroactively to defendant's building. A presumption exists that the legislature intends that statutes enacted by it shall operate only prospectively. Pratt v. Hayes, 20 Ill App2d 457, 156 NE2d 290; Barnett v. Barnett, 336 Ill App 601, 84 NE2d 648; People v. Capo, 393 Ill 342, 65 NE2d 777. In the absence of express language declaring otherwise, statutes will not be construed so as to give them a retroactive operation unless the language of the statute is so clear as to admit of no other construction. People ex rel. Schmidt v. Yerger, 21 Ill2d 338, 172 NE2d 753; McQueeney v. Catholic Bishop of Chicago, 21 Ill App2d 553, 159 NE2d 43. This same rule applies to ordinances.

It is apparent from the evidence that the building is one which would be classified as a pre-ordinance building under the provisions of chapter 78. Section 78–2(b) provides: *"Pre-Ordinance Building.* Every existing building, structure or part thereof which was completed, or for the construction of which a permit was issued prior to the effective date of this ordinance."* The effective date of the ordinance was December 30, 1949.

Meyer Cohn testified that he knew that the third floor apartment had been rented out as a separate rental unit during the entire time Mr. Sobol owned the property from 1949 to 1957. An exhibit was offered which was the closing statement concerning the sale of the property on August 19, 1949 by Schwartz to Sobol, and it showed that one Gertrude Rollo was the tenant of the third floor apartment at that time. Defendant also offered in evidence a registration statement filed with the Office of Rent Control in Chicago on July 28, 1947, which would show Gertrude Rollo as the tenant of the apartment on the third story of the building. Neither of these exhibits was admitted,

though they properly should have been. They would have sustained the testimony of Mr. Cohn that the third story apartment was in existence and rented as early as 1949 by Sobol.

Section 51–1.2, standing by itself, is clear. It reads that all buildings "hereafter erected or altered" shall have certain height limitations. Section 78–10.1 provides that "when permitted by the Chicago Zoning Ordinance, a pre-ordinance residential unit may be converted or altered so as to increase the number of units or persons to be accommodated . . . . (a) The said pre-ordinance building shall consist of not more than four stories and a basement or not more than fifty feet in height measured from grade to underside of roof sheathing. . . ." Section 51–1.2 deals only with buildings which are "hereafter erected or altered." The building in question here is not being erected, nor is it being altered in the sense referred to in the ordinance.

This court having determined that the building in the case before us is a three-story pre-ordinance building with the third story utilized as a dwelling unit, it is apparent that all the defendant is asking the city to do is to issue a permit to enable him to comply with the ordinances of the city relative to partitions, stairwell enclosures and the like. He is not asking that the building be changed or altered in any material way in violation of the ordinances. We cannot say that a compliance with other sections of the ordinances relied on which provide for certain fireproof construction of partitions, stairwells, etc. could in any sense be considered an alteration of the building, and even if such a strained construction could be applied in interpreting the ordinance, section 78–10.1 permits a conversion or alteration of a pre-ordinance building so long as the height limitation is not exceeded as a result of such conversion, and the height is prescribed

415

as a building consisting of not more than four stories and a basement or not more than fifty feet in height measured from grade to underside of roof sheathing. This specific provision would in any case be controlling in the instant case. People ex rel. Fore v. Missouri Pac. R. Co., 342 Ill 226, 173 NE 816.

The city cites City of Chicago v. L. J. Sheridan & Co., Inc., 18 Ill App2d 57, 151 NE2d 451, which considers sections 78–3 and 78–4, and holds that all applicable fire prevention requirements are specifically made applicable to existing buildings. The city argues that Table 51–1.2, providing for a limitation of two stories and an attic for storage only in a class comprising frame structures and allowing for extra height only when automatic sprinklers are present, is applicable to defendant's building. We cannot follow this reasoning inasmuch as in the instant case no complaint was made with reference to the installation of automatic sprinklers. The defendant on the trial of the case has indicated that he would comply with all applicable ordinance requirements concerning which complaint had been made by the city. Nor do we think that Unique Rest Haven, Inc. v. City of Chicago, 25 Ill App2d 419, 166 NE2d 627, is applicable because of the difference in the ordinances therein involved. In City of Chicago v. Elmhurst Nat. Bank, 35 Ill App2d 383, 183 NE2d 171, we held that an ordinance could be made applicable to a pre-ordinance building when the ordinance is properly drawn and apt words are used therein, and to the same effect is City of Chicago v. National Management, Inc., 22 Ill App2d 445, 161 NE2d 358.

In the case before us, as we have pointed out, the ordinances relied on by the City of Chicago do not require the defendant to deconvert the building in question. Both the city and the defendant take the view that the trial court found the defendant must

416

abandon the use of the third story apartment as a dwelling unit and that its finding and judgment were based upon that conclusion. If the court so concluded, it was in error. The building in question was a pre-ordinance building consisting of three stories, the third story being used as a dwelling unit. The city should have issued permits to the defendant to bring the existing three-story building into line with the various ordinances which apply specifically to existing buildings. The defendant in open court offered so to do. Under the ordinances the city had no right to urge a change in the building as it is and had been before the passage of the applicable ordinances.

The judgment of the Municipal Court of Chicago is reversed.

Reversed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.