CITY OF SOUTH EUCLID *v.* OSTENDORF-MORRIS CO.

(No. 2664—Decided July 7, 1970.)

Municipal Court of South Euclid.

*Mr. Robert Jaffe*, law director, for plaintiff.
*Mr. Irwin S. Haiman*, for defendant.

KLEIN, J.  The affidavit in this case, dated January 22, 1970, and signed by William Fibich, fire chief of the city of South Euclid, alleges that the defendant violated Article 14, Section 14.4 of the Fire Prevention Code in violation of Section 1501.01 of the Codified Ordinances of the city.  On April 13, 1970, defendant made a motion to quash the affidavit.  A partial hearing was held on that date followed by another hearing on May 4, 1970.

Section 1501.01 of the codified ordinances of the city of South Euclid is captioned "adoption" and reads in part as follows:

"For the purpose of prescribing regulations governing conditions hazardous to life and property from fire or explosion there is hereby adopted for the City of South Euclid that certain code known as the Fire Prevention Code * * *."

Prior to the second oral hearing in this matter, the parties filed stipulations of fact which read in part as follows:

"2. From April, 1949 to March 31, 1969, S. S. Kresge

was the lessee of the space at 4501 Mayfield Road and vacated the said premises on December 31, 1968. The store was used and occupied as a variety store. Retail sales were conducted on the first floor and the basement area was used for the storage of material and for the preparation of foods in a partial kitchen. * * *''

''3. The said premises (4501 Mayfield Road) contains approximately ten thousand (10,000) square feet of space on both the first floor and basement levels.

''4. The ceiling of said basement area is less than Four Feet Six inches (4′6″) above grade * * *.

''5. In May, 1969, Carido Floral Arts, an Ohio partnership, entered into a lease for said premises for a period of Five (5) years. Possession was taken early in May, 1969.

''6. Carido Floral Arts is engaged in the retail display and sales of artificial flowers, decorative supplies and materials and related items. Merchandise is stored in the basement and floral displays are assembled at the rear of the first floor level.''

''9. Stock clerks and other personnel of the tenant used the basement area for shipping, receiving, uncrating, etc. as was done by S. S. Kresge, the prior tenant.''

''14. The provisions of both the Fire Prevention Code and the Regional Building Code are similar in content except that the Fire Prevention Code requires automatic sprinkling systems in basements over Two Thousand Five Hundred (2,500) square feet in area rather than Five Thousand (5,000) square feet in area as is specified in the Regional Building Code.'

''15. There is no fire extinguishing equipment in the premises other than hand fire extinguishers.

''16. In May, 1969, the South Euclid Fire Department gave notice to the tenant, Carido Floral Arts, that a sprinkling system and permit were required for the premises * * * ''

''18. Citation for lack of fire protection equipment was

---

¹At the second oral hearing in this matter, the parties stipulated that the court could consider the word "similar" in this item to mean "the same."

issued January 22, 1970, upon the defendant by William Fibich, Fire Chief. There has been no compliance with either the Code or the determination of The Board of Appeals.[2]''

Section 1661.26 of the Regional Building Code[3] provides in part as follows:

''In addition to the requirements specified elsewhere in this Code, approved automatic fire-extinguishing equipment, meeting the requirements of this division, shall be installed in buildings as follows:

''Basements and cellars with ceilings less than 4 feet six inches above grade and having floor areas exceeding 5,000 square feet, when used for the manufacture, repair, sale or storage of combustible materials.''

The primary thrust of the defense in this case is that the provisions of Section 1661.26 apply only to ''existing buildings'' (unless there is a change in ''use or occupancy'').[4] In support of its contention, the defendant refers to Section 1601.07 of the Regional Building Code entitled *''Application to Existing Buildings''* which provides in part as follows:

''(a) *General. * * * When the provisions of this Code do not specifically require changes or alterations in existing buildings or other structures, buildings and other structures lawfully existing, used, and occupied on the effective date of this Code, may be continued in such use or occupancy without change or alteration* except as may hereafter be deemed necessary in the interests of public health, safety, or welfare.'' (Emphasis added.)

In view of the language of Section 1601.07 and certain other portions of the Regional Building Code referred to by the defendant in its brief, it would seem that there might be persuasive logic to the defendant's contention that 4501 Mayfield Road is specifically excluded from the operation

---

[2]The last sentence of Item 18 was added by stipulation at the oral hearing on May 4, 1970.

[3]Section 1313.01 of the Codified Ordinances of the City of South-Euclid adopted the Regional Building Code, effective September 23, 1963.

[4]Section 1603.26 of the Regional Building Code states that a change in ownership or tenancy is not deemed to be a change of "occupancy."

of Section 1661.26 of the Regional Building Code. It is unnecessary, however, for the court to decide the defendant's contentions in this regard for the reasons hereinafter set forth.

The affidavit in this case charges a violation of Article 14, Section 14.4 of the Fire Prevention Code. Item 16 of the stipulations states that a notice was given to the tenant by the South Euclid Fire Department in May 1969, that a sprinkling system was required for the premises. At the second oral hearing in this matter, it was agreed that "* * * there is no dispute as to the form of the citation or the person upon whom it was served * * *."

Article 14 of the Fire Prevention Code is entitled "Fire Protection Equipment." The applicable portion of this article reads as follows:

"Section 14.1 Scope. *This article shall apply to new and existing conditions* except that sections 14.4, 14.5 and 14.6 shall not apply where equivalent or more stringent legal requirements are enforced by the building or other municipal departments." (Emphasis added.)

"Section 14.4. Sprinklers Required in Basements. a. *Approved automative sprinkler systems shall be installed* in all basements having an area exceeding 2,500 square feet when used for the manufacture, sale or storage of combustible goods or merchandise, not including garages. * * *

"b. Combustible goods or merchandise shall include those made of wood, paper or rubber; those containing flammable or combustible liquids; those packed with quantities of excelsior or paper; and other goods or merchandise of equivalent or greater combustibility." (Emphasis added.)

In view of the above, it should be clear that Article 14 was intended to apply to both new "*and existing* conditions." This conclusion is fortified by the fact that Section 1.2 of Article 1 of the Fire Prevention Code entitled "Application of Code" states in part as follows:

"a. *The provisions of this code shall apply equally to new and existing conditions* except that existing conditions not in strict compliance with the terms of this code shall

be permitted to continue where the exceptions do not constitute a distinct hazard to life or property in the opinion of the Chief of the Bureau of Fire Preventions." (Emphasis added.)

Section 1313.04(c) of the Codified Ordinances of the city of South Euclid quite clearly provides that if there is a difference in the requirements specified in different sections of the Code, the more restrictive shall govern. Section 1313.04(c) provides as follows:

"Ordinances, Rules and Regulations. If in any specific case there is an apparent difference in the materials, methods of construction or other requirements specified in different sections of this Code, or between the requirements of this Code and any other applicable ordinance, rule or regulation of any administrative officer or board of this City, *the more restrictive shall govern.*" (Emphasis added.)

To the same effect as the above, is Section 1601.04 (c) of the Regional Building Code which provides as follows:

"(c) Ordinances, Rules and Regulations. *If in any specific case there is an apparent difference in* the materials, methods of construction or other requirements specified in different Sections of this Code, or *between the requirements of this Code and any other applicable ordinance,* or rule or regulation of any administrative officer or board of this Municipality, *the more restrictive shall govern.*" (Emphasis added.)

The defendant also contends that the South Euclid Law Director in his post hearing brief shifted "the thrust of this arrest from the provisions of the Regional Building Code to the Fire Prevention Code" because he found broader authority for the Fire Chief in the Fire Prevention Code than in the Regional Building Code. This claim clearly has merit; nevertheless, this court has before it an affidavit charging a violation of Article 14, Section 14.4 of the Fire Prevention Code, and, therefore, the provisions of this code are clearly before, and must be considered by, this court. The fact that the law director may not have argued the provisions of the Fire Prevention Code at the oral hearing in this matter and the fact that he did not cite or

argue Section 14.1 of the Fire Prevention Code at the oral hearings or in his briefs would not relieve this court of its responsibility to take judicial notice of this provision, Article 14 being the very article relied upon by the South Euclid Fire Chief in the affidavit which he signed and processed through the court.

The defendant urges also that Section 1.2 of the Fire Prevention Code indicates that the city has the burden of showing that ''an existing building has become a distinct hazard to life or property or that dangerous or hazardous conditions have been created.'' This court cannot accept the validity of this argument. At the oral hearing, the South Euclid Fire Chief testified at length as to why he considered the lack of automatic fire extinguishing equipment in the premises at 4501 Mayfield Road a distinct hazard to life and property, thereby fulfilling the requirements of Section 1.2. Furthermore, Section 1.5 of Article 1 specifically designates the lack of *adequate* ''fire extinguishing equipment'' as being a ''dangerous or hazardous'' condition within the contemplation of this section, and Article 14, the precise article requiring the installation of approved automatic sprinkling systems in basements having an area exceeding 2500 square feet, is without qualifications.

The defendant has also questioned the constitutionality of a law which purports to impose additional requirements upon a building which, when constructed, was in full compliance with all existing laws. This court cannot accept the validity of defendant's argument in this regard since the validity of legislation of the type involved herein has been consistently upheld by the courts. In *Queenside Hills Realty Co., Inc., v. Saxl* (1946), 328 U. S. 80, 66 S. Ct. 850, the Supreme Court of the United States stated as follows:

''In 1940 appellant constructed a four story building on the Bowery in New York City and since that time has operated it as a lodging house. It was constructed so as to comply with all the laws applicable to such lodging houses and in force at that time. New York amended its Multiple

Dwelling Law in 1944, providing inter alia, that lodging houses 'of non-fireproof construction existing prior to the enactment of this subdivision' should comply with certain new requirements. Among these was the installation of an automatic wet pipe sprinkler system. Appellant received notice to comply with the new requirements and thereupon instituted this suit in the New York courts for a declaratory judgment holding these provisions of the 1944 law unconstitutional and restraining their enforcement. '' * * *

''Little need be said on the due process question. We are not concerned with the wisdom of this legislation or the need for it. *Olsen* v. *Nebraska,* 313 U. S. 236, 246, 61 S. Ct. 862, 865, 85 L. Ed 1305, 133 A. L. R. 1500. Protection of the safety of persons is one of the traditional uses of the police power of the States. Experts may differ as to the most appropriate way of dealing with fire hazards in lodging houses. Appellant, indeed, says that its building, far from being a fire-trap, is largely fireproof; and to the extent that any fire hazards exist, they are adequately safeguarded by a fire alarm system, constant watchman service, and other safety arrangements. But the Legislature may choose not to take a chance that human life will be lost in lodging house fires and adopt the most conservative course which science and engineering offer. It is for the Legislature to decide what regulations are needed to reduce fire hazards to the minimum. Many types of social legislation diminish the value of the property which is regulated. The extreme cases are those where in the interest of the public safety or welfare the owner is prohibited from using his property. *Reinman* v. *Little Rock,* 237 U. S. 171, 35 S. Ct. 511, 59 L. Ed. 900; *Hadacheck* v. *Sebastian,* 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B 927; *Pierce Oil Corp.* v. *Hope,* 248 U. S. 498, 39 S. Ct. 172, 63 L. Ed. 381. We are dealing here with a less drastic measure. *But in no case does the owner of property acquire immunity against exercise of the police power because he constructed it in full compliance with the existing laws,* * * *'' (Emphasis added.)

In *Coffin* v. *Blackwell* (1921), 116 Wash. 281, 199 P. 239, the Supreme Court of the state of Washington stated as follows:

"We are fully in accord with the proposition advanced by respondents that the City, in the exercise of the police power, has a right to enact an Ordinance retroactive in effect, to compel a building owner to make necessary changes to reduce the fire hazard of a structure erected prior to the passage of the Ordinance. This proposition was fully sustained in *Seattle* v. *Hinckley*, 40 Wash. 468, 82 Pac. 747, 2 L. R. A. (N.S.) 398 * * *."

In *City of Chicago* v. *Miller* (1963), 27 Ill. 2d 211, 188 N.E. 2d 694, the Supreme Court of Illinois stated as follows:

"The defendants also argue that the city was estopped from obtaining the relief sought by its complaint. The evidence showed that this building was constructed in 1899 under a permit issued by the building department of the city of Chicago. Defendants contend that after a lapse of more than 60 years since the original construction of the building the city should be estopped from complaining about any building violations. This argument completely ignores the fact that the violations complained of in this case have nothing to do with the original erection of the building but deal with violations of the present municipal code, which was enacted in 1949 and was made applicable to existing buildings in 1956. *The mere fact that the building was originally constructed under the authority of a permit issued by the city in no way estops the city from bringing an action to compel compliance with the existing code.*" (Emphasis added.)

The following court decisions and authorities support the conclusion set forth above: *People* v. *Halpern* (1969), 304 N. Y. S. 2d 183, 60 Misc. 2d 873; *Williams* v. *Chicago* (1915), 266 Ill. 267, 107 N. E. 599; *Chicago* v. *National Management, Inc.* (1959), 22 Ill. App. 2d 445, 161 N. E. 2d 358; *Chicago* v. *Bethlehem Healing Temple Church* (1968), 93 Ill. App. 2d 303, 236 N. E. 2d 357; *Seattle* v. *Hinckley*, 40 Wash. 468, 82 P. 747; Shepard's Ordinance Law Anno-

ations, Vol. 1, Sec. 174; Crowley, Municipal Corps., Vol. 1, Section 33.48.

For the reasons set forth above, the motion to quash must be overruled.

*Motion overruled.*