## CITY OF ST. PAUL v. HARRY E. ROBINSON.[1]

May 21, 1915.

Nos. 19,204—(133).

**Trial by jury.**

1. Neither the Constitution nor the statutes of this state give the right of trial by jury to persons charged with petty offenses under the ordinances of a city.

**Publication of city ordinance.**

2. The publication of an ordinance of the city of St. Paul under the 1900 Home Rule Charter might lawfully be made on Memorial day.

**Authority to regulate street car transfers.**

3. The common council of the city of St. Paul under that charter had the right to pass an ordinance restricting the use of street car transfers to the persons to whom they were issued. The city council possessed only such legislative power as is granted to it by the Constitution or statutes in express terms and such as is necessary to the full enjoyment of powers expressly granted. The power was given to grant franchises for the operation of street railways and to regulate and control the exercise of such franchises. This conferred, by implication, the power to require issuance

[1] Reported in 152 N. W. 777.

---

Note.—As to how far the law of holidays extends to matters other than those relating to negotiable paper, see note in 19 L.R.A. 316.

of transfers by the railway company and to regulate the manner of their issuance by the company, and the manner of their use by the public.

**Evidence of violation of ordinance.**

    4. The evidence is sufficient to establish all the elements necessary to constitute an offense under the ordinance.

Defendant was prosecuted in the municipal court of St. Paul for violating Ordinance No. 3,218 with intent to defraud the St. Paul City Railway Company. Defendant was tried before Finehout, J., pleaded not guilty, and was convicted and sentenced to pay a fine of $5, or in default thereof to be imprisoned in the workhouse not to exceed five days. From the judgment of conviction, defendant appealed. Affirmed.

*Russell L. Moore*, for appellant.

*O. H. O'Neil* and *Thomas W. McMeekin*, for respondent.

HALLAM, J.

Defendant was convicted in the municipal court of the city of St. Paul upon a charge of violation of an ordinance of the city which provides that no person, for the purpose of defrauding the street railway company, shall use for passage or transportation upon any street car within the city of St. Paul, any transfer ticket, issued by the street railway company, which has not been issued directly to such person. Ordinance No. 3,218.

1. Defendant assigns as error the refusal of the court to grant him a jury trial. It is not claimed that he had any constitutional right to a jury trial, nor could he so claim under repeated decisions of this court that the constitutional guaranty of trial by jury does not extend to trials for petty offenses under the ordinances of a city. City of Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305; State v. Harris, 50 Minn. 128, 52 N. W. 387, 531; State v. Grimes, 83 Minn. 460, 86 N. W. 449; City of Madison v. Martin, 109 Minn. 292, 123 N. W. 809. It is not claimed that the statutes of the state give the right of trial by jury in this class of offenses in all courts of the state. The contention of defendant is that the statutes of the state give to all alleged offenders tried in this particular municipal court the right to

a jury trial, even though the offense charged is the violation of a city ordinance. This contention cannot be sustained. Section 7 of the Municipal Court Act (chapter 351, p. 996, Sp. Laws 1889), provides in terms that the judges of that court shall hear and dispose of such offenses "in a summary manner." This clearly means without a jury. City of Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305; Jones v. Robbins, 8 Gray (Mass.) 329; State v. Williams, 40 S. C. 373, 19 S. E. 5.

Defendant's contention is based on the provision of section 40 [p. 1002] of the Municipal Court Act, which reads as follows:

"Trial by jury in said court shall in all respects be conducted as in the district court of this state, and all laws of a general nature applicable to jury trials in said district court shall apply to said municipal court" and the further provision in section 41, p. 1002, which reads: "Each party to a civil or criminal action shall be entitled to three peremptory challenges and no more."

These provisions undoubtedly recognize that the right of trial by jury exists in some civil actions and criminal proceedings in that court. In construing these provisions it must be borne in mind that there exists under the Constitution (article 1, § 4), unquestioned right of trial by jury in certain cases which are cognizable by the municipal court. The right of trial by jury exists in civil actions at law regardless of the amount involved. Whallon v. Bancroft, 4 Minn. 70 (109); State v. Minnesota Thresher Mnfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L.R.A. 510. It exists also in criminal prosecutions for offenses which are essentially criminal under the general laws of the state and such as have by the regular course of law and the established modes of procedure as theretofore practiced been the subjects of jury trial. State v. Everett, 14 Minn. 330 (439); City of Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305; State v. West, 42 Minn. 147, 43 N. W. 845. Some of these civil actions and criminal proceedings are within the jurisdiction of the municipal court of St. Paul (section 1 [p. 994] Municipal Court Act), and in such actions and proceedings the right of trial by jury exists in that court. Construing the above sections of the Municipal Court Act in the light of these facts we are of the opinion that they were intended merely

to regulate the manner of exercise of the right of trial by jury in the cases where it already existed, and not to extend the right to any new cases. In no other manner can these sections be construed in harmony with section 7 [p. 996] of the act providing for "summary" trial of offenses arising under the ordinances of the city.

2. The next contention is that the ordinance under which defendant is being prosecuted is void because published on Memorial day. Under section 47 [c. 4, § 8] of the St. Paul Home Rule Charter of 1900, which was then in force, every ordinance was required to be published in the official paper before the same should be in force. Memorial day is made by statute one of the prescribed legal holidays, and it is provided that "no public business shall be transacted on those days, except in cases of necessity, nor shall any civil process be served thereon." G. S. 1913, § 9412, subd. 6. Two things are forbidden, service of process and transaction of public business. The publication of this ordinance clearly did not constitute service of process. Did it constitute transaction of public business? Two early decisions of this court bear on this question, Sewall v. City of St. Paul, 20 Minn. 459 (511), and Malmgren v. Phinney, 50 Minn. 457, 52 N. W. 915, 78 L.R.A. 753. In the former it was held that a notice of confirmation of a city assessment for local improvement made on Sunday was void. The statute at that time forbade the doing on Sunday of "any manner of labor, business or work, except only works of necessity and charity." G. S. 1866, c. 100, § 19. The court said that "Sunday is not a business day," and that therefore such a publication on that day was invalid. Even as to that proposition there is respectable authority to the contrary. Savings & L. Society v. Thompson, 32 Cal. 347; City of Denver v. Dumars, 33 Colo. 94, 80 Pac. 114; Hastings v. Columbus, 42 Oh. St. 585; Knoxville v. Knoxville Water Co. 107 Tenn. 647, 666, 64 S. W. 1075, 61 L.R.A. 888. In the Malmgren case it was held that a publication of a summons on Memorial day was valid. A distinction was drawn between Sunday and holiday publications. It was held that the publication on Memorial day was not a violation of the provision which prohibits the service of legal process on a legal holiday; that

the full purpose of notice for which the publication was designed was accomplished by such a publication; that the publication of a notice does not come within the spirit of the statute; that the object of the prohibition of the statute is to prevent any interference with the quiet enjoyment or observance of the day and that this reason does not apply to service by publication. The line of reasoning here followed is equally applicable to a case of this kind, and we think that since the decision in Malmgren v. Phinney it has been the understanding of the bench and bar that publication of legal notices in newspapers does not come within either of the inhibitions of the statute as acts done on legal holidays. Following the rule and the reasoning of the Malmgren case, it must be held that the publication of an ordinance in the official newspaper of the city on a legal holiday does not consitute the "transaction of public business" as that term is used in the statute relating to legal holidays.

3. It is contended the common council had no power to pass this ordinance. Undoubtedly the prevention of traffic in transfer tickets is a proper subject of legislation. In State v. Corbett, 57 Minn. 345, 59 N. W. 317, 24 L.R.A. 498, this court sustained a law prohibiting scalping in railway tickets. The principle is the same. It does not follow, however, that the council of the city of St. Paul has power to legislate on this subject. A city council has no inherent legislative power. General legislative power resides only in the state legislature. Power to legislate upon subjects of municipal concern may be granted to the city council. This body possesses only such legislative power as is granted to it by constitutional or statutory enactment in express terms, and such as is necessary to the full enjoyment and exercise of powers expressly conferred. City of St. Paul v. Laidler, 2 Minn. 159 (190), 72 Am. Dec. 89; City of St. Paul v. Traeger, 25 Minn. 248, 33 Am. Rep. 462; State v. Municipal Court of St. Paul, 32 Minn. 329, 20 N. W. 243; City of Red Wing v. Chicago, M. & St. P. Ry. Co. 72 Minn. 240, 75 N. W. 223, 71 Am. St. 482. In this case the charter of the city is its grant of power and we must look to it for evidence of authority to enact this ordinance. One provision in the charter seems to us decisive of this case. By chapter 4, § 22, [p. 124]

of the Home Rule Charter of 1900 the common council was empowered by ordinance to grant franchises for the construction and operation of street railways, and by chapter 4, § 23, [p. 125] it was empowered by ordinance to "provide for regulating and controlling the exercise * * * of any public * * * franchise *· * * in any of the streets" of the city. Under these provisions the city has the unquestioned right to require the city railway company to issue transfers, and it has done so. Pine v. St. Paul City Ry. Co. 50 Minn. 144, 52 N. W. 392, 16 L.R.A. 347. By parity of reasoning it must be said to possess the power to regulate the manner of the issuance of such transfers and their manner of use by the public. The use of a transfer ticket by a person other than the one to whom it was issued and who has paid the fare which it represents, is a use not contemplated by the city council when it required the issuance of transfers. Such use is a species of fraud, which the city council, in the exercise of its regulatory power, is authorized to prohibit by ordinance. Ex parte Lorenzen, 128 Cal. 431, 61 Pac. 68, 50 L.R.A. 55, 79 Am. St. 47; City of Chicago v. Openheim, 229 Ill. 313, 82 N. E. 294, 11 Ann. Cas. 554.

4. Defendant contends that the evidence is not sufficient to establish the elements legally necessary to sustain a conviction under the ordinance. We have examined the evidence with care and we are clear in the opinion that it is sufficient to sustain a conviction. There is sufficient evidence that the transfer was not issued to defendant. The evidence is that defendant "paid his fare by it." That constitutes "use" of it. The fact that he was at once arrested and then paid a cash fare, does not change the character of the earlier act. The proof of intent is ample. In fact all the elements of the offense were sufficiently proven.

Order affirmed.