### STATE of Minnesota, Appellant,

v.

### Tyeric Lamar LESSLEY, Respondent.

#### No. A08–1926.

Supreme Court of Minnesota.

March 11, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Patrick C. Diamond, Assistant County Attorney, Minneapolis, MN, for appellant.

William M. Ward, Chief Hennepin County Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, MN, for respondent.

John W. Lundquist, Sten–Erik Hoidal, Fredrikson & Byron, P.A., Minneapolis, MN; and Teresa Nelson, American Civil Liberties Union of Minnesota, St. Paul, MN, for amicus curiae American Civil Liberties Union of Minnesota.

Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant County Attorney, Anoka, MN, for amicus curiae Minnesota County Attorneys Association.

John M. Stuart, State Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for amicus curiae Office of the Minnesota State Public Defender.

OPINION

ANDERSON, PAUL H., Justice.

The State of Minnesota challenges the denial of its motion to remove the Hennepin County District Court judge assigned to the trial of Tyeric Lamar Lessley. Lessley has been charged with second-degree murder. In a pretrial hearing, Lessley announced that he would waive his right to a jury trial. The State made a motion for the judge to remove himself from presiding over Lessley's trial. The judge denied the motion. Following this denial, the State asked the Chief Judge of the district to remove the judge. The Chief Judge denied the request. The State then made a motion to deny Lessley's jury-trial-waiver request. The trial judge denied the State's motion and granted Lessley's waiver request. The State appealed the denial of its motions. The Minnesota Court of Appeals dismissed the appeal, holding that the State had failed to show that the challenged pretrial actions by the judge would have a "critical impact"

on the outcome of the prosecution. We granted review as to whether the State made the required threshold showing of critical impact, based on either the denial of the State's request for a jury trial or the judge's pretrial conduct.

The State, in its briefs and at oral argument, argued that, under the Minnesota Constitution, Lessley could not waive a jury trial without the State's consent. After oral argument, we asked the parties to file supplemental briefs on the question of whether the Minnesota Constitution requires the consent of both the defendant and the State of Minnesota, as the prosecuting authority, for waiver of a jury trial in a criminal case. Because we conclude that the Minnesota Constitution does not require the consent of the State for waiver of a jury trial in a criminal case, we affirm.

Early in the morning of March 17, 2008, respondent Tyeric Lamar Lessley, Lessley's cousin, and a friend finished spending the evening at a nightclub on Hennepin Avenue in Minneapolis.[1] When the three men left the nightclub at closing time, the police were responding to an unrelated fight outside the nightclub and the three men were maced. All three men got into a car driven by Lessley's cousin. They began to drive to a service station in order to wash out their eyes. While on their way to the service station, their car collided with a pickup truck near the intersection of Third Street and Park Avenue in Minneapolis.

The pickup truck was occupied by three or four men. The occupants of the truck were coming from a bar on Hiawatha Avenue in Minneapolis. After the collision, the car in which Lessley was a passenger kept going, prompting the occupants of the truck to follow the car. While the car was being followed, Lessley pulled out a revolver. The men in the truck were able to stop the car.

After the car was stopped, Lessley got out and began to walk away from the two vehicles. An occupant of the pickup truck, Darby Claar, got out of the truck and followed Lessley on foot. Claar caught up with Lessley and punched Lessley "once or twice," including once in the jaw. Armed with the revolver—a .44-caliber Smith and Wesson—Lessley shot twice at Claar and hit him once. Lessley then left the scene. Police officers investigating the traffic accident discovered Claar's body about a half-block from the scene of the traffic accident. An autopsy determined that Claar died from a single bullet wound.

As part of their investigation, the police learned that Lessley might have been involved in the shooting. They also learned that Lessley was from Omaha, Nebraska, and that he was staying at his aunt's house in south Minneapolis. The police then executed a search warrant at the aunt's house. During the search, the police found Lessley and a .44-caliber Smith and Wesson handgun. By the time police found the handgun, they had also recovered what appeared to be a .44-caliber bullet from Claar's body. The police then arrested Lessley. Police ballistics analysis later matched the bullet taken from Claar's body to the gun found at the home of Lessley's aunt.

There is some dispute as to the distance from which Lessley shot Claar. The criminal complaint quotes Lessley as saying the men were about six feet apart, but the medical examiner testified at the omnibus hearing that the gun was fired from a range of "two centimeters . . . up to three

---

1. We note that because the State's appeal involves pretrial proceedings, the facts depicted here are ascertained from the record available to us. None of the facts have been proven at trial. Our description of the facts as gleaned from the record is simply meant to provide context, not to endorse any particular version of the events that transpired.

feet." Lessley told the police that he shot Claar in self-defense. Lessley also told the police that he fired twice at Claar after Claar attempted to make him return to the scene of the accident. Lessley said that he left the shooting scene because he had a gun and was scared.

The State charged Lessley with murder in the second degree (intentional), Minn. Stat. § 609.19, subd. 1(1) (2008). Later, the State added a second count of murder in the second degree (unintentional—during commission of a felony), Minn.Stat. § 609.19, subd. 2(1). The case was initially set for trial on October 20, 2008. The State exercised its right under Minn. R.Crim. P. 26.03, subd. 13(4) (2009) (amended Feb. 11, 2010)[2] to remove the judge who was initially assigned to the case. The case was reassigned to a second judge and Lessley exercised his right under Rule 26.03 to remove that judge. The case was then reassigned to a third judge.

Lessley filed several pretrial motions. He moved to dismiss the second-degree murder charge on the basis that there was insufficient probable cause that he had acted with intent to kill. He also moved to dismiss on the ground that the State had failed to meet its burden of disproving beyond a reasonable doubt that he had acted in self-defense. Lessley also moved under Minn. R.Crim. P. 15.07 (2009) (amended Feb. 11, 2010)[3] for permission to plead to the lesser charge of second-degree manslaughter under Minn.Stat. § 609.205 (2008). Lessley additionally moved for a preliminary hearing to determine the competency of four State's witnesses, all of whom were alleged to have been intoxicated at the time of the automobile accident and shooting. The judge denied the motion for a hearing. After the motion for a competency hearing was denied, Lessley made a motion to permit him to take the depositions of the same four witnesses, which the judge ultimately denied.

The State asserts that at the omnibus hearing the judge made several statements that rendered the judge unable to act as the sole factfinder in this case. One statement occurred after a motion by Lessley, by which Lessley sought to exclude witness testimony on the basis that the State failed to preserve evidence of the witnesses' intoxication. The judge denied the motion, and Lessley again requested a competency hearing for the State's witnesses. The judge then considered whether it should order discovery proceedings to ascertain how much the witnesses had drunk. The State objected to any such discovery proceeding, stating that defense investigators could simply interview the witnesses. The judge initially allowed the discovery but subsequently rescinded its order. Following other pre-trial proceedings, the case was set for trial.

On the scheduled day of trial, Lessley withdrew his Rule 15.07 motion to plead to a lesser charge and waived his right to a jury trial. Immediately after Lessley testified that he wanted to waive a jury trial, the State said that it would ask the judge

---

**2.** The Minnesota Rules of Criminal Procedure have been amended for style since the events underlying this appeal.

**3.** Rule 15.07 read, at the time, in relevant part:

With the consent of the prosecuting attorney and the approval of the court, the defendant shall be permitted to enter a plea of guilty to a lesser included offense or to an offense of lesser degree. Upon motion of the defendant and hearing thereon the court may accept a plea of guilty to a lesser included offense or to an offense of lesser degree, provided the court is satisfied following hearing that the prosecution cannot introduce evidence sufficient to justify the submission of the offense charged to the jury or that it would be a manifest injustice not to accept the plea.

to remove himself from the case. The State told the judge that he had made clear how he felt about the case and that the judge had made comments "to elicit certain responses from the defense...." The State said that the judge had "indicated to everyone that our case was very weak, that our Second Degree Murder ... was thin." The State also said the judge had

> indicated to us in chambers and on the record that this is more of a manslaughter matter. You've heard enough of the evidence in this case and you've made certain assumptions about that evidence. And I think that unfortunately the Court has shown bias toward the defendant in this case, and I respectfully ask that you recuse yourself.

In the memorandum accompanying its motion to remove the judge from the case, the State contended that the judge had made "statements, comments, indications and accusations about the State's case and the State's ability to prove that the Defendant is guilty of second degree murder beyond a reasonable doubt, which display bias...."

The judge denied the State's motion to remove him from the case. The State then requested a stay in order to prepare a notice to remove under Minn R. Crim P. 13(4). The judge gave the State approximately 90 minutes to prepare "a written request for my removal on the basis of bias," to be accompanied by an "affidavit of prejudice." The State disagreed with the judge as to the next procedural step and filed an appeal with the Chief Judge of the Fourth Judicial District to remove the trial judge for cause.

The Chief Judge denied the State's motion, concluding there was no bias or prejudice shown by the trial judge in any of the five proceedings at issue. The Chief Judge said that the omnibus hearing transcript reflected "a judge doing his job—

asking many questions to help understand the nuances of the various pre-trial motions in order to properly entertain the motions and then rule upon them." The Chief Judge added that the State had taken "poetic license with the facts" to suggest bias or prejudice. The Chief Judge said the trial judge might have been "a tad heavy handed" but was not biased. The Chief Judge concluded that "based on the totality of the circumstances ... no reasonable person could discern any bias or prejudice against the State by [the trial judge]."

The State then moved to have the trial judge deny Lessley's jury-trial-waiver request. The judge denied the State's motion, stating that it did not appear that the State had a right to a jury trial and that denial of the waiver request would be an abuse of discretion. The judge then accepted Lessley's waiver request and told the parties to proceed. The State waived its right to make an opening argument and said it was prepared to call its first witness.

At this point, the Hennepin County Attorney entered the courtroom and requested a stay of proceedings in order to seek review by the Minnesota Court of Appeals. The judge granted the stay. Lessley moved to deny the stay on the basis that the State had not shown a "critical impact" for a pretrial appeal, as required by Minn. R.Crim. P. 28.04. Reversing his earlier ruling, the judge denied the stay and set the case for trial on December 9, 2008. The judge found that the State had "failed to show an adequate critical impact to generate a right to appeal under Rule 28.04." The judge also found the State had no constitutional right to a jury trial.

The State filed a pretrial notice of appeal with the court of appeals. The court of appeals issued an order questioning whether it had jurisdiction over the pre-

trial appeal and requesting that the parties file briefs. Specifically, the court of appeals ordered the parties to address the threshold issue of whether the district court's pretrial order allowing Lessley's jury-trial waiver would have a critical impact on the outcome of the case.

Ultimately, the court of appeals dismissed the State's appeal stating that "critical impact cannot be shown here." The court of appeals concluded that the State had failed to show critical impact on either issue—denial of the State's motion to remove the trial judge or the judge's acceptance of Lessley's jury-trial waiver. The court also concluded that a writ of prohibition, not a pretrial appeal, was the appropriate means to challenge the denial of the State's motion to remove the trial judge. The court stated that the State had not shown "any grounds to establish clear error" regarding the jury-trial waiver. The court reasoned that the State "has not cited any authority establishing that the state has a constitutional right to a jury trial or that the public has an interest in a jury trial enforceable by the state."

The State filed a petition for review, which we granted. After considering the oral and written arguments presented by the parties, we determined that more briefing was necessary. We ordered the parties to file supplemental briefs to address the question of whether the Minnesota Constitution requires the consent of both the defendant and the State, as the prosecuting authority, for waiver of a jury trial in a criminal case.[4]

## I.

■ As a threshold matter, we must decide whether the State's pretrial appeals on the judge-removal and jury-trial-waiver

issues should be heard. In Minnesota, pretrial appeals by the State are permitted, but with restrictions. *State v. Barrett*, 694 N.W.2d 783, 787 & n. 3 (Minn.2005); Minn. R.Crim. P. 28.04. One of the restrictions is that any alleged error must have a "critical impact" on the outcome of the trial—a requirement known as the critical-impact rule. In any pretrial appeal by the State, the State must include a "summary statement . . . as to how the trial court's alleged error, unless reversed, will have a critical impact on the outcome of the trial." Minn R.Crim. P. 28.04, subd. 2(2) (2009) (amended Feb. 11, 2010). To prevail in a pretrial appeal, the State " 'must clearly and unequivocally show both that the trial court's order will have a critical impact on the state's ability to prosecute the defendant successfully and that the order constituted error.' " *State v. Rambahal*, 751 N.W.2d 84, 89 (Minn.2008) (quoting *Barrett*, 694 N.W.2d at 787) (internal quotation marks omitted). The State raises two questions regarding the critical impact rule: first, whether the State's appeal regarding removal of the trial court judge comes within the rule; and second, whether the State's appeal regarding Lessley's jury-trial waiver comes within the rule. The court of appeals held that the State failed to satisfy the critical impact rule on either question.

■ Here, we need not decide whether the State has shown critical impact as to the judge-removal issue, because we conclude that the State did not follow the proper procedure when raising this issue. In *State v. Burrell*, we stated that " '[t]he proper remedy [for the State] to pursue when a motion to remove has been denied is . . . a writ of prohibition.' " 743 N.W.2d 596, 601 (Minn.2008) (quoting *State v. Cer-*

---

4. The Minnesota County Attorneys Association, the Office of the Minnesota State Public Defender, and the American Civil Liberties Union of Minnesota filed briefs as amici curiae.

*mak,* 350 N.W.2d 328, 331 (Minn.1984)). We conclude that a writ of prohibition was the appropriate means for the State to challenge the denial of its motion to remove the judge. Therefore, we do not address this part of the State's appeal because the State simply filed a pretrial appeal.

◼ As to the jury-trial-waiver question, the State argues that the trial judge's acceptance of Lessley's waiver met the requirements of the critical-impact rule, alleging that having the judge serve as fact-finder "would undermine public confidence in the integrity and fairness of the proceedings." Here, the facts and circumstances of the case and the arguments made by the parties do not present an issue that is readily subject to analysis under the critical-impact rule. Therefore, we decline to decide whether the State's pretrial appeal of Lessley's jury-trial waiver meets the critical-impact rule. Instead, we choose to consider the State's appeal under our inherent authority to accept an appeal in the interests of justice. *See In re Welfare of J.R., Jr.,* 655 N.W.2d 1, 3–4 (Minn.2003) (explaining that the court invokes inherent authority in exceptional cases). We conclude that this case is one of those exceptional cases where we should invoke our inherent authority. We conclude that it is in the interest of justice for us to consider the State's appeal because the State raises a critical constitutional issue that is capable of repetition yet evading review in the future.[5]

## II.

◼ We next consider the merits of the State's claim regarding Lessley's waiver of

his right to a jury trial. The State argues that we should read article I, section 4, of the Minnesota Constitution to require the State's consent before a criminal defendant may waive a jury trial and be tried by a judge of the district court. We first examine language itself and its context, and then explain why our case law, Minnesota statutes and rules, and the history of the constitution support a reading that article I, section 4 confers no such right on the State.

### A.

The State's first argument involves the text of the Minnesota Constitution Bill of Rights section that mentions jury-trial waiver. The section entitled "Trial by Jury" reads:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy. *A jury trial may be waived by the parties in all cases in the manner prescribed by law.* The legislature may provide that the agreement of five-sixths of a jury in a civil action or proceeding, after not less than six hours' deliberation, is a sufficient verdict. The legislature may provide for the number of jurors in a civil action or proceeding, provided that a jury have at least six members.

Minn. Const. art. I, § 4 (emphasis added). The second sentence of section 4 is known as the jury-waiver clause.

*Language in context*

The State argues that article I, section 4, by its plain language, allows a criminal

---

**5.** The dissent concludes that we should resolve this case without reaching the constitutional question it presents. We did not ask the parties to file supplemental briefs on the question of whether the Minnesota Constitution requires the consent of both the defendant and the State for waiver of a jury trial in

a criminal case with the purpose of ignoring the parties' supplemental briefs and those of amici curiae. The State has raised a critical constitutional issue that is capable of repetition yet evading review in the future, and therefore it is important for us to address this issue.

defendant to waive a jury trial only with the State's consent. The State contends that the phrase "by the parties" means that all parties in a case must waive, and that the State is a party in this case. The State additionally argues that the phrase "in all cases" means both criminal and civil cases.[6]

 "When examining constitutional provisions, our task is to give effect to the clear, explicit, unambiguous and ordinary meaning of the language. Unambiguous words need no interpretation." *Clark v. Pawlenty,* 755 N.W.2d 293, 304 (Minn. 2008) (citations omitted) (internal quotation marks omitted). "We will not 'substitute for words used in the constitution having a well-defined meaning other words having a different meaning.'" *State v. Hartmann,* 700 N.W.2d 449, 453 (Minn. 2005) (quoting *State v. Pett,* 253 Minn. 429, 432, 92 N.W.2d 205, 207 (1958)). "When considering the ordinary meaning of the words of a constitutional provision, we construe them 'in the light of the social, economic, and political situation of the people at the time of its adoption, as well as subsequent changes in such conditions.'" *Hartmann,* 700 N.W.2d at 453 (quoting *Rice v. Connolly,* 488 N.W.2d 241, 247 (Minn.1992)).

We acknowledge that the second sentence of article I, section 4, by itself, may be read to suggest that the State has a right to object to a criminal defendant's jury-trial-waiver request. Such a reading is based on the rationale that "all cases" includes criminal cases and "by the parties" includes the State as well as the defendant. But we conclude that the jury-waiver clause is properly read as applying specifically to civil cases. This conclusion is based on the context of article I, section 4, which clearly alludes to civil actions. The first sentence of section 4 mentions "cases at law" and "amount in controversy," signaling a reference to civil actions for recovery of money damages. In addition, the third and fourth sentences of section 4 refer explicitly to civil actions. Thus, read as a whole, the language of section 4's strongly suggests that this entire section applies only to civil trials.

## Bill of Rights

It is essential that—to paraphrase John Marshall, the fourth Chief Justice of the United States Supreme Court—we remember that it is a *Bill of Rights* we are expounding.[7] To fully appreciate the concept of a Bill of Rights, it is very important to keep in mind that it is the language in a constitution that we are construing. The Minnesota Constitution is, in essence, a contract between the people and those persons whom the people choose to put in a position of having sovereign power. Our constitution is a limited contract, and the Bill of Rights is the part of that contract that reserves rights to the people and protects them from the improper exercise of government power. *See* Adrienne Koch, *The Philosophy of Thomas Jefferson* 140–41 (1957). We have referred to article I of the Minnesota Constitution as a "Bill of Rights for the individual." *In re Appeal of O'Rourke,* 300 Minn. 158, 165, 220 N.W.2d 811, 815 (1974). The Bill of Rights guarantees free speech and "[t]he liberty of the press[,]" Minn. Const. art. I, § 3; protects people against unreasonable searches and seizures, *id.* § 10; prevents government

---

6. We note that the State is not arguing that it has a right to a jury trial under the U.S. Constitution. The State's argument is made solely under article I, section 4 of the Minnesota Constitution, and the State cites decisions under the U.S. Constitution only to inform us as to the proper interpretation of the Minnesota Constitution provisions at issue.

7. *See M'Culloch v. Maryland,* 17 U.S. 316, 407, 4 Wheat. 316, 4 L.Ed. 579 (1819) ("[W]e must never forget that it is a *constitution* we are expounding.").

from taking private property for public use without just compensation, *id.* § 13; and protects religious liberties against interference, *id.* § 16. It protects criminal defendants against excessive bail, *id.* §§ 5, 7; infliction of cruel and unusual punishment, *id.* § 5; and compelled self-incrimination and double jeopardy, *id.* § 7. Additionally, it guarantees defendants due process of law, *id.*, as well as a speedy and public trial by an impartial jury, *id.* § 6.

One scholar observed, "[t]he importance of individual rights to the founders of the Minnesota Constitution is [ ] demonstrated by the placement of the bill of rights at the beginning of the document—before any governmental institutions are established—rather than as a series of amendments at the end, as it appears in the Federal Constitution." Fred L. Morrison, *An Introduction to the Minnesota Constitution,* 20 Wm. Mitchell L.Rev. 287, 300 (1994). Other scholars have similarly described the Bill of Rights of the United States Constitution as a check on government power that benefits the individual. *See, e.g.,* Jason Mazzone, *The Bill of Rights in the Early State Courts,* 92 Minn. L.Rev. 1, 2 (2007) ("First Amendment protections, like almost all of the other Bill of Rights provisions, constrain both state and national government, thereby better securing individual rights at all levels."). Based on the placement of section 4 in the Bill of Rights article of the Minnesota Constitution and given the purpose of Minnesota's Bill of Rights, it would be counter-intuitive for us to construe the section 4 jury-trial-waiver provision as granting rights to the State as opposed to reserving rights to the people. Given the purpose of Minnesota's Bill of Rights and the placement of section 4 in it, we conclude that section 4 is reserved limited to civil matters.

## B.

To the extent that the jury-waiver clause of article I, section 4, could be considered ambiguous, an abundance of other authority supports our view that this section does not require a defendant to obtain the State's consent in order to waive a jury trial. When language in the Minnesota Constitution is ambiguous, we seek the meaning of the language "by looking beyond the language for other indicia of intent." *Kahn v. Griffin,* 701 N.W.2d 815, 825 (Minn.2005). Wherever reasonably possible, we seek to resolve ambiguity "in a way that forwards the apparent purpose for which the provision was adopted." *Id.* We strive "to ascertain and give effect to the intent of the constitution as indicated by the framers and the people who ratified it." *Id.* When doing so, we look "to the history and circumstances of the times and the state of things existing when the constitutional provisions were framed and ratified in order to ascertain the mischief addressed and the remedy sought by the particular provision." *Id.* Here, not only the purpose of our Bill of Rights, but also our case law on article I, section 4, Minnesota's statutes and procedural rules regarding jury-trial waiver, and the history and circumstances of section 4 all support our reading that the jury-waiver clause does not give the State the right to consent or block a criminal defendant's jury-trial waiver. We next elaborate on these sources.

### Case law

The State contends that our case law supports its reading of article I, section 4 that the State's consent is required before a criminal defendant can waive a jury trial. But we have specifically rejected the reading that the State proposes.[8]

---

**8.** Since its adoption in 1857, article 1, section 4 has been amended by adding two sentences that are not relevant to the issues in this case.

The relevant provisions of article 1, section 4,

In *Whallon v. Bancroft*, decided in 1860—just three years after Minnesota's constitution was adopted—a challenger to a county officer's election contended in his court action that he was entitled under article I, section 4 to a jury trial. 4 Minn. 109, 113 (Gil. 70, 74) (1860). We concluded that article I, section 4 did not entitle the challenger to a jury trial. *Id.* In *Whallon*, we said that section 4

> has reference only to civil matters, as it authorizes a waiver of the right conferred in *all cases*, which is not true of criminal cases, and also as criminal cases are specially provided for in section 6 of the same article.

*Id.*

We went on to explain that the purpose of article I, section 4 was, first, to "recognize the right of trial by jury as it existed in the Territory of Minnesota at the time of the adoption of the State Constitution; and second, to continue such right unimpaired and inviolate." *Id.* We stated that section 4

> neither takes from or adds to the right as it previously existed, but adopts it unchanged. Wherever the right of trial by jury could be had under the territorial laws it may now be had, and the Legislature cannot abridge it; and those cases which were triable by the Court without the intervention of a jury, may still be so tried.

*Id.* In subsequent cases, we have not questioned our statement in *Whallon* that article I, section 4 "has reference only to civil matters."

More recently, in *Gaulke v. State*, we were dubious about the idea that the State's consent was required for a criminal defendant to waive a jury trial. 289 Minn. 354, 359, 184 N.W.2d 599, 602 (1971). In *Gaulke*, the district court denied a defendant's request to waive a jury trial and be tried by the court. *Id.* at 355, 184 N.W.2d at 600. On appeal, the defendant claimed that he was denied a right guaranteed to him by Minn. Const. article I, section 4, and Minn.Stat. § 631.01 (1978).[9] *Id.* We denied Gaulke's claim because we concluded that he needed to bring the claim on direct appeal, rather than by postconviction petition. *Id.* at 359, 184 N.W.2d at 602. In dicta, we were skeptical of Gaulke's argument that a criminal defendant has an absolute right under Minn. Const. article I, section 4, and Minn.Stat. § 631.01 to waive jury trial. *Id.* We stated:

> Considering the historical antecedents of our constitution, it is doubtful that the legislature intended to grant the accused an absolute right of waiver. Although we perceive no intent that the [defendant's jury trial] waiver be subject to the consent of the prosecution, it has long been considered to be subject to the approval of the trial court.

*Id.*

In *Gaulke*, we contrasted Rule 23(a) of the Federal Rules of Criminal Procedure, which allows a defendant to waive a jury trial only with the approval of the court and the consent of the government, with Minn.Stat. § 631.01, Minnesota's counterpart rule at the time.[10] Minnesota Stat-

---

are essentially unchanged from the provisions in the original Constitution.

**9.** Minnesota Statutes § 631.01 (1978) reads, in relevant part:

> Except where defendant waives a jury trial, every issue of fact shall be tried by a jury of the county in which the indictment was found or information filed.... If the defendant shall waive a jury trial, such waiver

shall be in writing signed by him in open court after he has been arraigned and has had opportunity to consult with counsel and shall be filed with the clerk. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

**10.** Minn.Stat. § 631.01 predated enactment of the Minnesota Rules of Criminal Procedure

utes § 631.01 did not expressly condition waiver "on the consent of either the prosecutor or the court." *Id.* at 358, 184 N.W.2d at 602. Notably, in *Gaulke* we did not question the constitutionality of Minn. Stat. § 631.01.

In *Gaulke* we clearly stated that a defendant's waiver is not subject to the State's consent. While our statement was dicta, we have cited this language in later cases. In *State v. Kilburn*, a concurring justice described our statement in *Gaulke* as "considered dictum." 304 Minn. 217, 227 n. 1, 231 N.W.2d 61, 66 n. 1 (1975) (Peterson, J., concurring). In *State v. Hoskins*, we noted that in *Gaulke*, "the matter of whether a defendant may waive a jury trial was left to the sound discretion of the trial court." 292 Minn. 111, 118, 193 N.W.2d 802, 808 (1972). *Gaulke* and these subsequent cases add support to our conclusion that article I, section 4 does not require that the State's consent be obtained before a criminal defendant can waive a jury trial.[11]

Significantly, we have also held that a criminal defendant's jury-trial waiver is a matter governed by statute, not by constitutional provisions. In *State v. Woodling*, we affirmed a defendant's assault and battery conviction by the Minneapolis municipal court after the defendant expressly waived a jury trial. 53 Minn. 142, 143, 146, 54 N.W. 1068, 1068 (1893). We stated that the Minnesota Constitution "contains no prohibition forbidding [a defendant from waiving a jury trial], or prohibiting the legislature from permitting it to be done." *Id.* at 145, 54 N.W. at 1068–69. In *State v. McKenzie*, we rejected a defendant's argument that he had a unilateral right under Minn. Const. article I, section 6 to waive a 12–person jury. 532 N.W.2d 210, 217–18 (Minn.1995). We stated that "the right to waive a jury trial entirely is governed by statute, not by the constitution." *Id.* at 217. We went on to note that under Rule 26.01 of the Minnesota Rules of Criminal Procedure, a defendant had no absolute right to waive a jury;

and was superseded by Minn R.Crim. P. 26.01, subd. 1(2).

**11.** In a footnote in *Gaulke*, we remarked that "[i]t has long been considered that Minn. Const. art. 1, § 4, applies to both criminal and civil cases." 289 Minn. at 358 n. 6, 184 N.W.2d at 601 n. 6. But we did not explain this statement further although we cited three cases in support of the statement: *State v. Sackett*, 39 Minn. 69, 70, 38 N.W. 773, 774 (1888); *State ex rel. Madigan v. Wagener*, 74 Minn. 518, 523, 77 N.W. 424, 425 (1898); and *City of St. Paul v. Robinson*, 129 Minn. 383, 385, 152 N.W. 777, 778 (1915). The dissent cites to both *Gaulke* and *Sackett* to support its position that section 4 applies to criminal cases.

In *Madigan*, we addressed an argument of one of the parties that a peace-time court marshal violated a citizen's rights under article I, sections 4 and 7, and found that party's argument wanting, *Madigan*, 74 Minn. at 523–25, 77 N.W. at 425–26. But we did not comment on whether section 4 applies to criminal trials.

In *Robinson*, we held that the Municipal Court Act did not extend the right to a jury trial beyond "where it already existed," 129 Minn. at 385–86, 152 N.W. at 778, and we explained that right as it existed, stating, "there exists under the Constitution (article 1, § 4), unquestioned right of trial by jury in certain cases which are cognizable by the municipal court. The right of trial by jury exists in civil actions at law regardless of the amount involved." *Id.* at 385, 152 N.W. at 778. We went on to say that a right to a jury trial also existed in some criminal trials, *id.*, but again, we did not state that section 4 applies to criminal trials.

In *Sackett*, we did state that sections 4, 6, and 7 of article I are designed for the protection of the citizen accused of crime. 39 Minn. at 70, 38 N.W. at 774. Despite this single assertion in *Sackett*, which lacks clarity because it groups sections 4, 6 and 7 of article I together, our analysis shows that most relevant authority does not support any assertion in *Sackett* that section 4 applies to criminal trials, and therefore supports our conclusion here that section 4 only applies to civil trials.

instead, the district court had the discretion to decide whether to hold a jury or bench trial. 532 N.W.2d at 217–18.

In sum, our jurisprudence on article I, section 4 generally, and jury-trial waiver specifically, supports the position that the Minnesota Constitution does not require the State's consent be obtained before a criminal defendant can waive a jury trial.[12]

*Statutes and rules*

Minnesota statutes and our criminal rules further inform our conclusion. Minnesota has had statutory provisions in place for jury-trial waiver since at least 1935. In 1935, the legislature adopted the following language:

> Except where defendant waives a jury trial, every issue of fact shall be tried by a jury of the county in which the indictment was found or information filed.... If the defendant shall waive a jury trial, such waiver shall be in writing signed by him in open court after he has been arraigned and has had opportunity to

consult with counsel.... Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

Act of Apr. 17, 1935, ch. 194, § 2, 1935 Minn. Laws 358, 360 (codified at Minn. Stat. § 631.01 (1941)). In 1975, the jury-trial-waiver procedures were incorporated into the Minnesota Rules of Criminal Procedure, and section 631.01 was later repealed. Act of May 29, 1979, ch. 233, § 42, 1979 Minn. Laws 485, 500. Jury-trial waiver is now governed exclusively by the Minnesota Rules of Criminal Procedure, more specifically Rule 26.01, which read at the time of Lessley's jury-trial-waiver request as follows:

> Waiver on the Issue of Guilt. The defendant, with the approval of the court may waive jury trial on the issue of guilt provided the defendant does so personally in writing or orally upon the record in open court, after being advised by the court of the right to trial by jury and

---

**12.** Courts in other states, interpreting similar constitutional jury-trial waiver language, have come to differing conclusions. The Wisconsin Supreme Court has repeatedly held that its state's jury-waiver language—which differs from Minnesota's in only punctuation and style—refers to civil actions only. In *Bennett v. State,* decided 35 years after adoption of the Wisconsin Constitution, the court said:

> It is evident that section 5 ... was intended to secure the right of trial by jury in civil and not in criminal actions. The words in the section, "and shall extend to all cases at law, without regard to the amount in controversy," clearly limit the provisions of that section to civil actions at law, and exclude the idea that it was intended to apply to criminal actions. The provision in said section that "a jury trial may be waived by the *parties,* in all cases, in the manner prescribed by law," confirms this construction of the section. In the constitution, the state and the defendant in criminal prosecutions are not spoken of as parties to an action.

57 Wis. 69, 14 N.W. 912, 914 (1883). The Wisconsin Supreme Court recently confirmed its conclusion in *Bennett:* "While Article I, Section 5 provides that the right 'shall remain inviolate,' it does not apply to all matters. Historically, it has been interpreted to apply only to civil cases." *State v. Schweda,* 303 Wis.2d 353, 736 N.W.2d 49, 53–54 (2007) (citing *Dane County v. McGrew,* 285 Wis.2d 519, 699 N.W.2d 890 (2005); *Bennett v. State,* 57 Wis. 69, 14 N.W. 912 (1883)).

The Montana Supreme Court, examining similar waiver language in the Montana State Constitution, decided that the language applied to both civil and criminal proceedings:

> [T]he language adopted by the Constitutional Convention within Article II, Section 26, nonetheless clearly requires all parties to consent before "cases may be tried without a jury or before fewer than the number of jurors provided by law." We conclude that Article II, Section 26, of the Montana Constitution [ ] requires the State's consent prior to the waiver of a jury trial.

*State ex rel. Long v. Justice Court, Lake County,* 335 Mont. 219, 156 P.3d 5, 10 (2007).

after having had an opportunity to consult with counsel.

Minn. R.Crim. P. 26.01, subd. 1(2)(a) (2009) (amended Feb. 11, 2010). Nothing in the procedure established by the rule makes the criminal defendant's jury-trial waiver subject to the consent of the State.

Our Advisory Committee on the Rules of Criminal Procedure recommended the rule language that we adopted in 1975 after soliciting comments and holding a public hearing. In 1977, the committee recommended amending the rule to allow the State to object to a defendant's jury-trial waiver, but we did not adopt the change.

We have observed that a " 'practical construction of the constitution, which has been adopted and followed in good faith by the legislature and people for many years, is always entitled to receive great consideration from the courts.' " *Clark v. Pawlenty,* 755 N.W.2d 293, 306 (Minn.2008) (quoting *City of Faribault v. Misener,* 20 Minn. 396, 401 (Gil. 347, 352) (1874)). *Clark* held that the petitioners' proposed reading of a judicial-election statute was unreasonable, as it was contrary to more than 150 years of Minnesota history. *Id.* at 307. In Minnesota, the criminal-justice system has operated for more than 75 years under procedures that do not make the criminal defendant's jury-trial waiver subject to the consent of the State. During that time, the legislature could have acted to recognize such a right on the part of the State, but has never done so. Our court has interpreted the jury-waiver clause of article I, section 4 on multiple occasions, yet we have never read the clause to require the State's consent before a defendant can waive a jury trial.

*Constitutional convention debates*

The State rests its argument heavily on the debates and proceedings of Minnesota's constitutional convention, inferring from those events and remarks an intent that article I, section 4 apply to both civil and criminal matters. But we perceive the convention debates to be a less reliable indicator of what the drafters intended than the State believes them to be. Because the debate history is at the crux of the State's argument, it bears further discussion.

Minnesota's first and only constitutional convention, called to order on July 13, 1857, was "somewhat of a mess." Douglas A. Hedin, *The Quicksands of Originalism: Interpreting Minnesota's Constitutional Past,* 30 Wm. Mitchell L.Rev. 241, 243 (2003). Bickering Democrats and Republicans split into two constitutional conventions, each of which produced its own document. Mary Jane Morrison, *The Minnesota State Constitution: A Reference Guide* 1 (2002). Each of the separate conventions proceeded on the assumption that it was the genuine convention and therefore the only one with the authority to write Minnesota's constitution. William Anderson, *The Constitution of Minnesota,* 5 Minn. L.Rev. 407, 422 (1921). Each convention produced a document that was later considered by a compromise committee.

The Democrats produced the following jury-trial language as the fifth item in their Bill of Rights:

The right of Trial by Jury shall be secured to all, and remain inviolate forever; but a Jury Trial *may be waived by the parties in all civil cases,* in the manner to be prescribed by law.

*The Debates and Proceedings of the Minnesota Constitutional Convention* 203 (Francis H. Smith, reporter 1857) (emphasis added). The Republican debate regarding jury-trial waiver was more extensive, although its ultimate meaning is unclear. The Republicans on July 24, 1857, debated the following language that had been reported from committee:

The right of trial by jury shall remain inviolate; and shall extend to all cases at

law without regard to the amount in controversy; but a jury trial *may be waived by the parties in all cases* in the manner prescribed by law.

*Debates and Proceedings of the Constitutional Convention for the Territory of Minnesota* 97 (T. Andrews, rep., St. Paul 1858) (emphasis added).

David Morgan, a delegate from Hennepin County, moved to amend the section's waiver language by adding the word "civil" before the word "cases." *Id.* Andrew D. Balcombe, a delegate who presided over part of the Republican convention, agreed with the amendment, remarking that "[i]n most of the Constitutions that word 'civil' is used in that connection, and there is propriety in its use." *Id.* Delegate N.P. Colburn opposed the amendment, seeing no objection to allowing a criminal defendant "to waive his right of trial by jury, if he chooses." *Id.* Replying to Colburn, Morgan said, in relevant part:

> To grant a criminal the right to choose whether he will be tried by a jury of his vicinage, or by some judge whom he might fancy would try his case better, is a thing which has never yet been done in this country.

*Id.*

As delegates debated Morgan's proposal, one delegate, David Secombe, noted that a territorial statute in place "[f]or the last six years" allowed an offender arraigned before a magistrate to waive a jury trial without consultation with the prosecutor. *Id.* at 98. Morgan conceded Secombe's point, but asserted that it would be "new, unheard of, and highly objectionable" to allow offenders and district attorneys to agree to trial without a jury and thereby "compel the court" to try the case. *Id.* Morgan's amendment failed and the Republicans continued with other matters. Eventually the compromise committee agreed to, and the delegates adopted, a version of the second sentence of article I,

section 4 that closely resembled the provision that the Republicans considered in their debates.

The State argues that the debates prove that the Republicans meant to apply section 4 to criminal cases, because the Republicans enacted the "all cases" language of section 4 after rejecting delegate Morgan's proposal to add the word "civil." But the debates also suggest that the delegates wanted to continue allowing criminal defendants, by statute, the right to jury-trial waiver. As delegate Secombe mentioned, a territorial statute allowed a defendant alone to waive a jury in criminal cases before justices of the peace, whereas consent from both parties was required in civil cases before justices of the peace. *See* Pub. Stat. 1858, ch. 59, § 67. The debate statements and exchanges do not clearly explain either the status of the law at the time or the intent of the drafters regarding the language of article I, section 4. Thus, we conclude that the debates do not definitively settle the question of what the framers intended and do not direct us to read section 4 in the manner argued by the State.

Moreover, contrary to the State's argument, two scholarly works on the constitution have suggested that section 4 has been long understood to apply to civil trials. One work refers to article I, section 4 as "[t]he section relating to civil cases." William Anderson & Albert J. Lobb, *A History of the Constitution of Minnesota* 159 (1921). Another author calls section 4 the "Civil Jury Clause." Mary Jane Morrison, *The Minnesota State Constitution: A Reference Guide* 42. Morrison adds that these interpretations of section 4 are important because the Seventh Amendment to the U.S. Constitution, which guarantees a jury trial for civil suits at common law for more than $20, does not apply in state courts, *id.*, suggesting that article I, section 4 likewise applies to civil actions.

We also note that Professor William Anderson, a historian of the Minnesota Constitution, has cautioned against interpreting language in the constitution based on the debates. William Anderson, *The Need for Constitutional Revision in Minnesota*, 11 Minn. L.Rev. 189, 191 (1927). According to Professor Anderson, the final constitution resulted from the secret, undocumented compromise committee, and much of the result differed from what either convention had recommended. *Id.* "The published debates of the two wings of the convention are, therefore, of little value in explaining the provisions and phraseology of the constitution, and they have been only infrequently cited." *Id.* We agree with Professor Anderson that the debates are of limited value in explaining article I, section 4 of the constitution.

*Policy arguments*

Last, we note that the State and amicus Minnesota County Attorneys Association propound a number of essentially policy-based arguments for why we should read article I, section 4 to make a criminal defendant's jury-trial waiver subject to the consent of the State. The State asserts that 30 states currently require the prosecutor's consent before a defendant may waive a jury trial; notes that an American Bar Association standard advocates such a requirement; and points to the federal system, in which Rule 23(a) of the Federal Rules of Criminal Procedure require a jury-waiving defendant to obtain the government's consent. But we emphasize that the question before us is not whether it might be wise policy for a criminal defendant to need the consent of the State in order to waive a jury trial. Rather, the question is whether the State's consent is required by article I, section 4 of the Minnesota Constitution. In sum, our analysis leads us to the conclusion that article I, section 4 of the Minnesota Constitution does not require the State's consent before a defendant seeks to waive a jury trial. Article I, section 4 is found in the Bill of Rights article of the Constitution—an article that reserves rights to the people. Read in context, the language of article I, section 4 indicates that the section is limited to civil cases—a reading that is consistent with placement in the Bill of Rights article. Further, our case law, statutes, and procedural rules regarding jury-trial waiver, and the history and circumstances surrounding the application of article I, section 4 all support our conclusion. Therefore, for all the foregoing reasons, we hold that article I, section 4, of the Minnesota Constitution does not require the consent of the State before a defendant may waive a jury trial in a criminal case.

Affirmed.

GILDEA, Justice (dissenting).

I respectfully dissent. The majority affirms the district court's decision to allow a bench trial in this matter. The district court granted Lessley's request for a bench trial because it concluded that (1) the State did not have a constitutional right to a jury trial, and (2) it would be an abuse of discretion to deny Lessley's request. The majority affirms the district court because it holds that Article I, section 4 of the Minnesota Constitution does not apply to criminal cases, and therefore the State has no right to object to the defendant's request for a bench trial. In my view, we should resolve this case without reaching the constitutional question the majority decides.[1]

1. The majority states that I have concluded that article 1, section 4 applies to criminal cases. I have reached no such conclusion. It is my view that we need not resolve that question in this case. Our court has discussed this question in dicta in several cases, but we do not appear to have actually decided

We generally avoid reaching constitutional questions "if there is another basis on which a case can be decided." *State v. Bourke*, 718 N.W.2d 922, 926 (Minn.2006) (internal quotation omitted). Following our general practice, I would resolve this case based on the language of the applicable criminal rule, Minn. R.Crim. P. 26.01 (2009) (amended Feb. 11, 2010),[2] and our precedent, rather than reaching the constitutional question. Under the rule and our precedent, the district court abused its discretion in granting Lessley's request, and I would therefore reverse.

I do not lightly come to the conclusion that a district court judge has abused his discretion. But the facts of this case compel me to this result.

The State charged Lessley with intentional murder in the second degree for the shooting death of Darby Claar. Pursuant to Minn. R.Crim. P. 15.07, Lessley moved that the district court allow him to plead guilty to the lesser offense of second-degree manslaughter. The court denied that motion by order dated October 14, 2008. In the order, the court said that "the State's evidence of intent is limited," and that "[Lessley's] remorse is ... compelling." A few days later, Lessley, by submitting a request to waive a jury trial, asked this judge to be the finder of fact in his case. Lessley's desired fact-finder had earlier questioned the credibility of the State's witnesses and characterized the case—on the record—as one involving "idiocy" and "a bunch of drunkards."

The State objected to Lessley's request for a bench trial, and urged the court to deny it.[3] In ruling on Lessley's request, the court noted that it had "some discretion." But the court viewed its discretion as

> limited to those cases where the court thinks that for some reason the defendant's decision to waive the jury is not smart, often pro se people. It does not appear that the State has a right to a jury trial and I suspect it would be an

---

this important question. I would likewise not do so in this case because, in my view, the proper exercise of judicial restraint counsels that constitutional issues not be resolved if the case can be decided on alternative grounds.

I must note, however, at least one of my reservations with the majority's analysis of the constitutional question. In a footnote in *Gaulke v. State*, we said that "[i]t has long been considered that Minn. Const. art. I, § 4, applies to both criminal and civil cases." 289 Minn. 354, 359, 184 N.W.2d 599, 601 n. 6 (1971). The majority attempts to dismiss this conclusion because the majority concludes we did not offer sufficient support for it. I disagree.

We supported our conclusion in *Gaulke* with citation to *State v. Sackett*, 39 Minn. 69, 70, 38 N.W. 773, 774 (1888). In *Sackett*, the defendant and the State agreed to proceed with a jury trial before 11 jurors. The defendant was found guilty and appealed contending his right to jury trial was violated. *Id.* We said that "[t]he bill of rights (article 1 of our constitution) contains three sections, the fourth, sixth, and seventh, which are designed for the protection of the citizen accused of crime.... Each is an independent but absolute guaranty to those needing protection...." 39 Minn. at 70, 38 N.W. at 774. It seems to me that *Sackett* provides compelling support for our conclusion in *Gaulke* that article I, section 4, applies to criminal cases.

2. Minn. R.Crim. P. 26.01, subd. 1(2)(a) provides:

> The defendant, with the approval of the court, may waive jury trial on the issue of guilt provided the defendant does so personally in writing or orally upon the record in open court, after being advised by the court of the right to trial by jury and after having had an opportunity to consult with counsel.

3. As the majority notes, the State requested that the judge remove himself from the case, and also attempted to remove the judge for cause; these efforts were unsuccessful. The court deferred ruling on Lessley's request for waiver of the jury until the chief judge in the district resolved the removal issue.

abuse of discretion for me to deny the right to the waiver, although frankly my job would be much easier. That's not one of the choices I get. So I'm going to deny the State's motion with regard to the jury trial and accept the waiver of the jury trial.

The court offered no other rationale for its decision; the court simply signed the jury-waiver form Lessley had provided.

The court's ruling constitutes nothing more than a reflexive grant of Lessley's request. But we have repeatedly recognized that the defendant does not have an unconditional right to a bench trial. *E.g., State v. McKenzie*, 532 N.W.2d 210, 217–18 (Minn.1995) (recognizing that "a defendant does not have an absolute right to waive jury"). Rather, we have said that the court must, in the exercise of its sound discretion, decide whether to approve the request. *Id.; State v. Linder*, 304 N.W.2d 902, 904–05 (Minn.1981); *State v. Kilburn*, 304 Minn. 217, 224–25, 231 N.W.2d 61, 65 (1975); *State v. Hoskins*, 292 Minn. 111, 118, 193 N.W.2d 802, 808 (1972); *Gaulke v. State*, 289 Minn. 354, 359, 184 N.W.2d 599, 602 (1971). The district court's " 'duty' " in considering a jury-waiver request is not " 'discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from' " the jury-trial process. *State v. Ross*, 472 N.W.2d 651, 653 (Minn.1991) (quoting *Patton v. United States*, 281 U.S. 276, 312–13, 50 S.Ct. 253, 74 L.Ed. 854 (1930)). In my view, the district court's automatic and unreasoned approval of Lessley's request runs afoul of this precedent.

Moreover, the district court gave no consideration to the State's objection because, according to the court, the State did not have "a right to a jury trial." But, as Lessley argued to the district court, "[t]he current rule provides the State with an opportunity to have its concerns heard and considered by the judge before the defendant is allowed to have a bench trial." I agree.

Exercise of the discretion that Minn. R.Crim. P. 26.01 vests in the district court requires that the court consider all factors relevant to the defendant's request for a bench trial. For example, in *Linder*, we affirmed the district court's decision to deny the defendant's request for a bench trial. 304 N.W.2d at 905. We said that the court had "expressed a legitimate concern for defendant's right to a fair trial" if the case were tried to the court because all of the judges "in the district had been involved in defendant's case in some way...." 304 N.W.2d at 905. Thus, in *Linder*, we recognized that the perceived fairness of the process properly informed the decision on a jury-waiver request. *See Shorter v. State*, 511 N.W.2d 743, 747 (Minn.1994) (recognizing that " 'justice must satisfy the appearance of justice' " (quoting *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954))).

Because it also relates to the perceived fairness of the process, I would hold that the sound exercise of the district court's discretion warranted consideration of the State's position on Lessley's request. As we recognized in *Gaulke*, " 'the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result' "—the jury. 289 Minn. at 357, 184 N.W.2d at 601 (quoting *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965)). There might be a case where the objection offered by the State to a defendant's request for a bench trial is done purely for an " 'ignoble purpose.' " *Gaulke*, 289 Minn. at 357, 184 N.W.2d at 601 (quoting *Singer v. United States*, 380 U.S. at 36, 85 S.Ct. 783). In such a situa-

tion, the district court would be well within its discretion under Rule 26.01 in refusing to give the State's objection any weight. But that is not this case. In this case, the district court had repeatedly questioned the prosecutor's charging decisions, challenged the credibility of the State's witnesses, characterized the State's evidence as "limited" and "thin," and insulted the alleged victim.[4]

In summary, a defendant does not have an unconditional right to demand a bench trial. Our criminal rule and precedent vest the decision of whether to approve such a request with the district court. The court's discretion is not constricted as the judge in this case suggested. Rather, the court should consider all factors relevant to the question, including whether the available judge (or judges) is able to provide both parties a fair trial if he acts as the finder of fact, whether a bench trial will undermine the public's confidence in the judicial process, and whether pretrial publicity or any other relevant facts have somehow rendered ineffective " 'the tribunal which the constitution regards as most likely to produce a fair result.' " *Gaulke*, 289 Minn. at 357, 184 N.W.2d at 601 (quoting *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965)). Applying these factors to the facts here, I would hold that it was an abuse of discretion to grant Lessley's request for a bench trial.

I reach this result because, in my view, to grant Lessley's request risks undermining the public's trust and confidence in our judicial system. We have said that in order "to maintain public trust and confidence in the judiciary, judges ... should act to assure that parties have no reason to think their case is not being fairly

judged." *Pederson v. State*, 649 N.W.2d 161, 163–65 (Minn.2002) (reversing order denying petition for postconviction relief "[o]ut of concern that the process employed here gives the appearance of impropriety" where the district court "adopt[ed] verbatim the state's proposed findings of fact, conclusions of law and order" exonerating the prosecutor of misconduct without affording the petitioner an opportunity to respond to the state's proposed findings). Because the judge " 'is vested with the responsibility to ensure the integrity of all stages of the proceedings[,]' " the judge must act so that he is viewed as " 'the neutral factor in the interplay of our adversary system....' " *Id.* at 164 (quoting *State v. Mims*, 306 Minn. 159, 168, 235 N.W.2d 381, 387 (1975)).

In this case, given the judge's comments that I referenced above and the judge's refusal to remove himself from the case, there was a basis for concern as to the appearance of the fairness of the proceeding if that judge acted as the fact-finder in this case. *See Linder*, 304 N.W.2d at 905. The record does not provide any countervailing factor that would support granting Lessley's request for a bench trial. For example, the record does not reflect any concerns over pretrial publicity. The record likewise does not provide any other basis for me to conclude that " 'the tribunal which the constitution regards as most likely to produce a fair result' " has been undermined so as to outweigh the appearance concerns the judge's comments created. *Gaulke*, 289 Minn. at 357, 184 N.W.2d at 601 (quoting *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965)). I would therefore reverse and remand the matter for a jury trial.

4. In highlighting the district court's concerns with the State's case, I do not mean to suggest that the court demonstrated sufficient bias to require his removal for cause.

DIETZEN, Justice (dissenting).

I join in the dissent of Justice Gildea.